Moody, J.
The defendant, an Indian, called in English Crow Dog, was convicted in the First District Court of the crime of murder, and brings the record here by writ of error.
. The first and most important question which confronts us, arises upon the objection of the defendant to the exercise by the District Court of jurisdiction over him and" of the crime for which he has been convicted.
It appears from the transcript, that the defendant and the person killed were Indians, belonging to the Brule Sioux Band of the Sioux Nation of Indians. That the killing took place at their agency upon the Great Sioux Indian reservation, in the First Judicial District of this territory, in August 1881.
The act of Congress (Rev. Stat., Sec. 2145.) extending the crimes act to the Indian country contains, in Sec. 2146, these exceptions: “It shall not extendió crimes committed by one Indian against the person or property of another Indian, nor to any . Indian committing any ’offense in the Indian country, who has been punished by the local law of the tribe, Or to any case where *111 by treaty stipulation tbe exclusive jurisdiction over sucb offense is, or may be secured to tbe Indian tribes respectively.”
If this prosecution rested solely upon such general act of Congress it would be apparent it could not be sustained. But it does not so rest.
By the treaty made with this band of Indians, of which both the defendant and the deceased were members, proclaimed February 24, 1869, (15 Stat. 635) it was expressly provided that, “if bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white black or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their' agent and notice by him, deliver up the wrong doer to the United States to be tried and punished according to its laws.”
This treaty has frequently been recognized by Congress as of , binding force, and so far as the portion quoted is concerned, it has never been abrogated or repealed. On the contrary by reference to Article 8th of the agreement made with the same tribe of Indians, approved by act of Congress of February 28, 1877, (19 Stat., 254) it will be seen that its provisions are expressly continued in force, and a positive guarantee given these Indians of protection through the enforcement of the laws of the United States. And in such subsequent agreement a clear and plainly expressed submission of the Indians to the jurisdiction of such laws is provided for. The language is this. “The provisions of the said treaty of 1868 “(proclaimed February 24, 1869)” except as herein modified, shall continue in full force. “They (the said Indians) ’’shall be subject to the laws of the United States, and each individual shall be protected in his rights of property, person and life.”
The person for the killing of whom this defendand is convicted, Spotted Tail, signed ■ the.,treaty of 1868, and the subsequent *112 ■agreement. Tie was tbe principal Chief of the Brule Sioux band, and while submitting himself and his people to the jurisdiction and laws of the United States, and covenanting that they should be tried and punished according to such laws, for wrongs dona by them to any person, including Indians, he at the same time secured the solemn guarantee and plighted faith of the government, of such protection as the enforcement of its laws would afford.
That this treaty and this agreement possess the force of law, and are equal in vigor and strength to an act of Congress, will scarcely be questioned.
Chief Justice Marshall in Foster v. Nielson, 2 Peters, 314, says: “A treaty is to be regarded in Courts of justice as equivalent to an act of the legislature, whenever it operates of itself, without the aid of any legislative provision.”
Clearly, this treaty and agreement so operate. The laws of Congress provide for the punishment of persons committing murder in the Indian country, and for the trial of offenders charged with such crime.
The exception of Indians committing crimes against other Indians is general. This treaty and agreement take these Indians out of such exception, and apply to them the general rule. Any oilier view would deny them the right guaranteed by solemn treaty, and would make the covenant of the government a mockery.
It is significant that the Department of the Interior, the department of the government having these very Indians in charge, after advising with the Department of Justice, and after a careful consideration of the question by the able heads of those departments, has instituted and directed this prosecution.
While we fidly recognize the ultimate responsibility of this Court in determining the law upon this subject, this fact ought to have great consideration and weight. It plainly shows the construction *113 put upon this treaty and the agreement, by the Department <»£ the government under whose auspices they were made.
Without further elaboration we thinkit clear that the jurisdiction of the District Court over the person of the defendant and the crime alleged against him, should be sustained.
The same remarks will apply to the offer of the defendant’s counsel to prove that, in some way not stated, the defendant was punished by the tribe. If he is subject to be tried and punished according to the laws of the United States, then he is taken as clearly out of the second exception as the first.
The next question in importance relates to the competency of a witness offered on behalf of the defendant upon the trial.
An Indian woman named Pretty Camp was called as a witness . by the defendant. It was proven, and is practically conceded, that she was the defendant’s lawful■ wife. Upon the objection of the United States Attorney she was excluded from testifying, and this is assigned as error.
It is an undoubted rule of the common law, that the wife is not a competent witness, for her husband in such a case as the one at bar.
The statute of the United States makes the party defendant in a criminal action a competent witness in his own behalf at his own volition, but makes no provision for the wife testifying.
In the absence of a statute expressly allowing a wife to testify for her husband in a criminal action, she is not a competent witness for him.
Neither the removal of the disability of interest, nor the allowing of a defendant to testify in his own behalf in a criminal action makes the wife a competent witness.
The removal of the disability of interest, or allowing a prisoner to testify, in no way weakens the reasons upon which the rule of excluding the wife was grounded.
*114 This appears to be the uniform holding:
Wilke v. People, 53 N. Y., 527; Lucas v. Brooks, 18 Wall., 436; People v. Reagle, 60 Barb., 527; Bird v. Houston, 10 Ohio St., 429; Steen v. State, 20 Ohio St., 333; Kennedy v. People, 37 Ind., 353; State v. Waterman, 1 Nev., 543; Wharton Cr. Evidence Sec. 400—437.
In Wilke v. People, Folger J., says: “The wife of a prisoner was not a .competent witness in a criminal action or proceeding against him. This is the rule of the common law, and can only be abrogated by statute.”
Mr. Justice Strong, in Lucas v. Brooks says: “The objection to a wife’s testifying on behalf of her husband, is not, and never has been that she had any interest in the issue to which he is a' party. It rests solely upon public policy.”
But it is claimed in this case that the rule of the common law is abrogated by the provision of the Code of Criminal Procedure of this territory, which by its reference to the Code of Civil Procedure, makes a wife a competent witness for her husband.
This court has repeatedly held that such criminal Code did not and was not intended to apply to the courts while exercising the jurisdiction under the laws of Congress, in cases in which the United States is a party, and sitting for the whole district. It has sole reference, by express terms, to criminal actions and proceedings in which the territory is. a party. It would be wholly impracticable to apply many of its provisions .to the courts while sitting for the entire district in United States cases. Besides, as we have had occasion heretofore to say, the territorial statute does distinctly recognize other rules of practice and proceedings peculiar to the district courts for the district in federal cases'; *115 and which rules are well known to the profession, and are so far as applicable the rules of the temmon law. It may be doubtful whether, in the absence of express authority by Congress, it would be competent for the territorial legislature to prescribe rules of evidence and of competency of witnesses in cases in which the United States is prosecuting. Serious doubts could be suggested whether this is among the implied powers conferred in authorizing legislation upon all rightful subjects, especially as Congress itself has undertaken to act, and has made the party prosecuted competent but has not changed the rule as to the wife. However that may be, the territory has Aot undertaken thus to legislate. Its legislation upon this subject is confined to those cases prosecuted in the name of the territory, for a violation of its laws, and in the courts for the counties and subdivisions.
Such a radical change' in the rule of competency of witnesses cannot be recognized by the courts upon any doubtful construction of a statute. The change must be clearly and unequivocally expressed.
We do not wish to be understood as holding that the District Courts are precluded from following the provisions of the Code of Criminal procedure in United States cases, where it is applicable. They may do that with propriety, because it embodies in many of its provisions the practice of the common law, and that practice which the courts sitting for the whole district ■ in United States cases, have followed for nearly twenty years, and ever since the organization of courts in the territory.
The remaining question which will be noticed, arises upon the exception to the charge of the District Court on the burden of proof.
The evidence is all preserved and brought in the transcript here. That for the prosecution discloses a willful and deliberate, killing with a deadly weapon with intent to kill, and without any facts *116 of justification, excuse or mitigation appearing from such evidence. The defendant’s own statement tends to prove a killing in self defense; but he was unsupported by other proofs, and his statement was met by the prosecution by rebutting evidence. The case being thus, the jury were instructed by the court, that the willful and deliberate killing of one human being by another, with a deadly weapon with intent to kill, nothing else appearing, raised a presumption that the killing was murder. They were further instructed that if the evidence of the prosecution, standing alone, showed that the killing was under such circumstances as constituted murder, and the defendant sets up the defense of excusable homicide by reason of the killing being in self defense, the burden was upon the defendant to establish that fact — not beyond a reasonable doubt, but by a preponderance of the evidence. That the presumption arising from the willful arid deliberate killing with a deadly weapon with intent to kill, would remain until over come by proof of facts which showed the killing to be justifiable or excusable, or which would mitigate it to manslaughter. Incorporating into his charge the words of the territorial statute the court said, “Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was excusable, or justifiable. ”
At the same time particular care was taken by the Court .to instruct the jury that upon the whole evidence they must be satisfied of the defendant’s guilt beyond a reasonable doubt before they could convict. And also if they had a reasonable doubt of which of the two degrees of criminal homicide he' was guilty, they must give him the benefit of such doubt and convict, if at all, of the lesser, towit, manslaughter.
*117 "We understand the principle of law involved to be this. The killing under the circumstances stated raises a presumption of guilt, which presumption, where no facts in justification, excuse or mitigation appear in the evidence for the prosecution* must remain until proof sufficient to overcome such presumption shall be given by the defendant, and that the proof does not overcome such presumption if it exactly balances with the rebutting proof of the prosecution upon those facts, or if the weight is against such justification, excuse or mitigation. It is not enough to raise a reasonable doubt whether such justification or mitigation be proven, for the presumption still remains. To apply the doctrine of reasonable doubt in that way to a defense, would be trifling with the sanctity of human life.
The doctrine of reasonable doubt should be applied to the whole proofs and to the whole case. Then the proofs, and the presumptions and inferences arising therefrom, are all taken into account.
Self defense when set up by a defendant to excuse or justify a homicide is an affirmative defense, and to say that the prosecution must negative such an affirmative defense by negative proof sufficient to show beyond a reasonable doubt that it is not true, is stating an absurdity.
The rule of law émbodied in the charge of- the District Court is sustained by the overwhelming weight of authority,' and may be regarded as the settled law of this country.
Foster's Crown law. 255; People v. Schryver, 42 N. Y., 1; People v. Milgate 5 Cal., 127; Silvus v. State, 22 Ohio St., 90; State v. Neeley, 20 Iowa., 108; Com. v. York, 9 Metcalf, 93.
Some other minor questions are presented in the brief of the able counsel for the defendant, but the ones here dismissed are the' ones pressed upon our attention on the oral argument, and all we deem necessary to a proper understanding of the case. .
*118 No error appearing in the record the judgment of the District Court is affirmed, and the cause remanded with directions to carry the judgment into execution.
All of the Justices concurring.