DORMAN, Respondent, v. CROOKS STATE BANK, Appellant.

(225 N. W. 661.)

(File No. 6467.   Opinion filed May 17, 1929.)

212

*Boyce, Warren & Fairbank,* of Sioux Falls, for Appellant.
*Danforth & Barron,* of Sioux Falls, for Respondent.

FULLER, C. By this appeal from an order of the circuit court overruling its demurrer, the appellant, Crooks State Bank, challenges the sufficiency of plaintiff's complaint to constitute a cause of action. The pleading of respondent, Dorman, the plaintiff below, alleges in substance that plaintiff is the owner of a de-

scribed tract of land in Minnehaha county; that the appellant, Crooks State Bank, was plaintiff's agent in the leasing of said premises and in looking after the collection of rental due to plaintiff; that during the farming seasons of 1920 and 1921 the plaintiff leased said premises to one W. W. Allen under written contracts and leases, drafts of which are attached to the complaint. By reason of these leases it is alleged that plaintiff acquired a lien upon crops and personal property of the lessee as security for rent; that, the rent being payable in the sum of $1,800 for each of the two seasons, there was a balance of the same unpaid by the said Allen in a sum exceeding $1,800; that the defendant, with full knowledge of the indebtedness and of the terms of the leases, and without consent of plaintiff, received and accepted the proceeds of certain popcorn raised upon the premises and of certain hogs raised thereon, covered by plaintiff's lien; and that the amount so received by appellant was unknown to plaintiff, but approximated $1,700. It is also alleged that plaintiff was damaged in the full amount of these proceeds, that the amount thereof is due and owing by defendant to plaintiff, and, as a prayer for relief, the plaintiff asks for an accounting and for such further relief as may be equitable.

Both of the leases are long in form, and go into great detail with respect to the use and occupation of the premises and the cultivation and care of the same, the protection of buildings, trees, and shrubbery, et cetera. The first lease is dated November 1, 1919, and was witnessed and acknowledged December 1, 1919. It is a lease of the premises by respondent, Dorman, to W. W. Allen, for a term commencing March 1, 1920, and ending February 28, 1921. It declares that the party of the second part, the lessee, Allen, agrees to pay first party rent in the sum of $1,800, payable on the 1st day of January, 1921, at the Butler County State Bank, in Clarksville, Iowa. The lease also contains the following provision:

"It is understood that the said Lelah E. Dorman shall have, in addition to the lien given him by law upon the terms of this lease, a lien upon all of the property of the said W. W. Allen used or situated upon the leased premises, whether said property is exempt from execution or not, for the whole amount of ———— rent agreed to be paid by this lease, and in default of payment said Lelah E. Dorman may levy upon said term or said property and sell it to pay

the rent." (There is, in this state, no landlord's lien "given by law.")

The second lease was similarly executed, dated, and acknowledged on September 30, 1920, and is equally complete in its details concerning the use, occupation, and protection of the premises. The term of lease is stated to commence March 1, 1921, and to terminate March 1, 1922. The lessee covenanted to pay as rent for the premises the sum of $1,800 on January 1, 1922, at the above-mentioned bank. The lease contains the following provisions pertinent to the questions here presented:

"The second party hereby waives and relinquishes all right from exemption from sale or seizure under distress or execution that he now has or may hereafter have by virtue of any law of the state exempting personal property from seizure and sale; on execution or distress for rent, said first party shall have, upon the terms of this lease, in addition to the lien given him by law, a lien upon all personal property owned by the said second party during the term of this lease whether said property is exempt from execution or not, and sell the same or any part thereof in satisfaction of said rent hereby agreed to be paid. * * * The second party also agrees to pay and discharge all costs and attorney's fees, or any expenses, that shall arise from enforcing any of the covenants of this lease by the first party, and it is further agreed by and between the parties that all the crops growing or in stack, crib, or granary on said premises shall be security for all sums due or to become due from party of the second part to party of the first part, as evidenced by book account or note held by party of the first part."

Each of the instruments above mentioned is in the form of an ordinary farm lease, and recites that the first party has leased or does lease the premises to the second party, who, in turn, covenants, among other things, to pay the rent aforesaid. The complaint is thus based on the theory that plaintiff, by virtue of the terms of the leases, acquired a lien on personal property of, and in the possession of, the tenant, Allen, and that the defendant bank is liable for payment or accounting of the proceeds of the sale of the property, by it wrongfully received.

Rev. Code 1919, § 1579, reads as follows: "No register of deeds shall receive or file any chattel mortgage which does not contain a receipt over the signature of the mortgagor to the effect

that a copy of such mortgage has been received by him; and every chattel mortgage not containing such receipt shall be null and void."

And Rev. Code, § 1549, provides that: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge."

The contracts of lease in this case do not contain a receipt for copy, and therefore do not comply with section 1579, supra. Appellant contends that the provision for security for rent in each of these leases, above quoted, constitutes a chattel mortgage; that, being a chattel mortgage, it is subject to the provisions of section 1579, supra, and is void for want of compliance with the statute. Respondent, the lessee, on the other hand, contends that each of these leases creates an equitable lien, as recognized by this court in Savings Bank v. Mundt, 47 S. D. 161, 197 N. W. 156, and, concerning this contention, counsel for appellant makes the following statement:

"It is sometimes difficult to tell of just what nature a lien contained in a lease is, whether it is to be held a chattel mortgage and construed by the laws covering chattel mortgages, or whether it is to be termed a pledge and covered by the law of pledges. The difficulty has not been lightened at all, by certain recent decisions recognizing an indefinite and imperfectly defined hybrid, and denominated an equitable lien."

Doubtless made in good faith and reflecting, as it does, a confusion of others, the above statement may not be disregarded. Though counsel point out none of the details of decision which contribute to uncertainty, and suggestion no manner of reconstruction of precedent, we may allude to a few circumstances which seem to merit consideration.

In the case of Savings Bank v. Mundt, supra, a debtor, owing money to a bank and borrowing more, verbally contracted that the bank should conduct an auction sale of farm machinery, live stock, and other personal property, in the possession of the debtor, and satisfy the indebtedness from the proceeds. The agreement was held by the court to constitute a valid equitable lien, binding upon third persons with knowledge of the contract, notwithstanding the

provisions of sections 1549 and 1579, above quoted. In that case no question was considered as to the necessity of the mortgagor's receipt for copy of mortgage and a contract of lien was upheld, which was not in writing of any form.

■■ To meet the situation squarely, let us say that there is no distinction of substantial importance between equitable liens and equitable mortgages on personal property, and concede that the case of Savings Bank v. Mundt approves the principles according to which equitable mortgages on personal property may be upheld between the parties and those of actual knowledge. And let us add that, according to Savings Bank v. Mundt, and the fundamental rules of general text therein stated, an agreement convincingly established, and clearly showing the intention of the party to give a lien or security upon specified chattels, is good and enforceable in equity according to that intention. Should the court recede from that position? To the contrary, the case of Savings Bank v. Mundt is consistent with old and respectable authority of this court. To that point we cite but one case, for that case, not only recognizes the existence of an equitable mortgage on personal property, but squarely holds that a contract in a lease, similar to the provisions quoted in this case, creates an equitable mortgage. Esshom v. Watertown Hotel Co. (1895) 7 S. D. 74, 80, 81, 83, 63 N. W. 229. Between the time of that decision and the decision of Savings Bank v. Mundt, the validity of equitable liens or mortgages on personal property has frequently been recognized, either directly or indirectly, by this court. But every equitable right or interest derives not from a declaration of substantive law, but from the broad and flexible jurisdiction of courts of equity to afford *remedial* relief, where justice and good conscience so dictates. Aside from the broad character of equitable liens, as stated in Savings Bank v. Mundt, the very origin of such liens defies any restriction by the means of *mere definition,* and therefore we are compelled to give direct attention to the question as to what equitable liens, if any, are void in this state by reason of Rev. Code, § 1579, which contemplates that chattel mortgages shall be in writing, and which renders void any such mortgage which fails to include the mortgagor's receipt for copy.

■ At the outset, and in the interests of clarity, we must deal with section 1549, supra, which declares in substance that

every transfer of property otherwise than in trust or as a pledge made only as security for the performance of another act, shall be deemed a mortgage. There is nothing in this section, nor in the statutory context with which it is associated, to suggest that the term "mortgage" therein is technically restricted in meaning to legal mortgages of statutory description, although it seems to have been assumed, in certain cases, that every mortgage on personal property, in this state, must first be looked upon as a statutory mortgage, and, on that account, be considered void where it fails to comply with statutory requirements as to manner of execution. But section 1549 was in the law of this state long before section 1579 was adopted, requiring the mortgagor's receipt for copy in chattel mortgages. As early as 1895 (Esshom v. Watertown Hotel Co., supra), while section 1549 was in the law, this court found no difficulty in recognizing the doctrine of equitable mortgages on personal property. We are therefore led to recognize the existence and validity of equitable mortgages on personal property, and adopt this self-evident proposition: That the term "mortgage," in Rev. Code, § 1549, is not technically narrowed and restricted to legal or statutory mortgages, and does not, by implication and with the text of that statute, deny the validity of equitable liens, incumbrances, or mortgages on personal property.

As the contracts of lease in this case clearly express a plain intention of the lessee to give to the lessor a lien on chattels of and in the possession of the debtor, for the payment of rent, it becomes a premise in this discussion, by reason of Esshom v. Watertown Hotel Co., supra, and Savings Bank v. Mundt, supra, that each of the leases in this case creates an equitable mortgage on personal property.

But what of Rev. Code, § 1579, declaring void every chattel mortgage which does not contain therein a mortgagor's receipt for copy? Does that statute, and its construction by this court, produce a confusion or contrariety with the continued recognition of the doctrine of equitable liens? The answer, as we may show, is this: When that section is viewed in the light of its letter, and the statutory context with which it is associated, and the reason and object of its enactment, it will be found affirmatively applicable to a class of mortgages which may be easily recognized according to a rule of simple statement, and, by reason of that

rule, the class of equitable mortgages, which are void by reason of the statute, may, quite as easily, be identified and understood.

Section 1579 is a part of a brief subdivision of the Code which deals with the form, manner of execution, filing, release, and foreclosure of chattel mortgages. It is closely preceded by section 1576, as follows:

"A mortgage of personal property may be made in substantially the following form:

" 'This mortgage, made the ———— day of ————, in the year 19—, by ————, of ————, mortgagor, to ————, of ————, mortgagee, witnesseth: That the mortgagor mortgages to the mortgagee (here describe the property), as security for the payment to him of ———— dollars, on (or before) the ———— day of ———— in the year 19—, with interest thereon (or security for the payment of a note or obligation, describing it, etc.).

" 'Witnesses: ————.

(Signature) ————.' "

There is a significance in the fact that section 1579, dealing itself with the manner of execution of a chattel mortgage, is related, by associated context in the Code, to a mortgage of the *form* above set forth. That form is not only the form of mortgage as the same is commonly recognized, but, when properly executed, it is of such technical import that it carries with it the *legal remedy* of foreclosure sale on published notice (Rev. Code, § 1588), and renders criminal the act of the mortgagor in sale or disposition of the mortgaged property without written consent of the mortgagee. The form of chattel mortgage above shown is substantially the form provided by law and in common use from the early history of Dakota Territory. It is almost invariably accompanied by a note, of which it is security, and passes with the note from hand to hand by assignment of form equally peculiar and commonly known, and is canceled or "satisfied" on the records by an instrument executed according to statutory direction. Rev. Code 1918, § 1580. The blanks of such a form of mortgage, in common and ordinary use, contain spaces in which a description of the mortgaged chattels may be inserted, with the result that the executed mortgage is easily subject to alteration after execution by the addition of further items of mortgaged chattels. To avoid such a

fraud or imposition on mortgagors, the statutory provisions now in question were adopted, requiring a copy to be delivered to the mortgagor and a receipt therefor to appear in the mortgage above his signature.

It is a cardinal rule of interpretation that a statute must be construed with reference to the objects intended to be accomplished by it. In view of the statutory context to which section 1579 is related, and the recognized reason for its adoption, there can be no question of the accuracy of the conclusions of this court stated in Kennedy v. Hull, 14 S. D. 234, 237, 85 N. W. 223, 224, as follows:

"The appellant, on the other hand, contends that the act of 1897 [section 1579, supra] only applies to chattel mortgages proper, generally known as such, and not to a lease containing a lien clause to secure the payment of the rent; and appellant further contends that the evident object and purpose of the statute was that the mortgagor who executes and delivers a chattel mortgage should be furnished with a copy of the same to hold as a check against any changes in the original which might be made after its execution and delivery; and that a lease like the one in question, or a duplicate, must necessarily be delivered to the party who gives the lien. We are of the opinion that the appellant is right in this contention. * * * Taking into consideration the nature and character of a chattel mortgage as generally understood in the community, and the evident object and purpose of the lawmaking power in enacting the law of 1897 [section 1579, supra], we are clearly of the opinion that the lease in question was not, and was not intended to be, included in that act."

Though the case of Kennedy v. Hull has received little mention as a precedent, we may here repeat, with the simplicity of thought therein expressed, that leases of farm lands, cropper's contracts, and the like are not chattel mortgages within the meaning of section 1579, supra, and require no receipt for copy. On the other hand, an instrument prepared in substantially the form set forth in section 1576, supra, would be recognized as a chattel mortgage by the most untutored debtor as well as the most technically informed or experienced creditor. It is such an *instrument* to which section 1579 applies to require the mortgagor's receipt for copy.

■■ We have thus reached the conclusion that each of the contracts for lien or security in this case creates an equitable mortgage, binding between the parties and those of actual notice according to the intention expressed. And, since the provision for lien or security is written within an ordinary farm lease, we have found that it is not affected by section 1579, requiring, in chattel mortgages, the mortgagor's receipt for copy. Based as it is on certain of the decisions of this court, the above conclusion is otherwise reasonable; for it is a circumstance consistent with the agricultural characteristics of this state that instruments, commonly referred to as leases, are in daily use and preparation to fix the contractual terms under which farm lands are occupied, leased, or cropped. These contracts vary in details as numberless as the individuals renting farm lands, and they contain provisions of varying terminology calculated to secure to the landlord a compensation for the use of the land either in payment of rent money, performance of services by the tenant, or delivery of a share of the crop produced. Whatever the act which the tenant undertakes to perform, the lease or contract usually contains provisions in the nature of security for its performance. It is a matter of common knowledge that a great number of such instruments are drafted by notaries, real estate brokers, bank clerks, and the parties themselves—persons neither experienced in the use, nor acquainted with the significance, of technical terms and forms. That instruments, of such informal preparation and of such common relation to the ordinary business of a farming state, should be freed from technical interference, is a purpose which ought to be assumed with every statutory enactment, and reflected, so far as possible, in the decisions of courts.

Nevertheless, if we abruptly leave the discussion here, we shall have cleared the situation from one point of view, only to make conspicuous other difficulties lurking in the background of this subject. Exactly as a deed of lands, given for security, is one of the most common and simple types of equitable mortgages, so a bill of sale to chattels, given as security for a debt, is undeniably an equitable mortgage. However, in Walklin v. Horswill, 24 S. D. 191, 123 N. W. 668, this court held that such an instrument, being intended as a mortgage, was controlled by section 1579, supra, and was void for want of the mortgagor's receipt for copy.

How may we distinguish between the cases of Savings Bank v. Mundt and Walklin v. Horswill, that it may be known just why the verbal contract is good in equity, and the contract which was partly reduced to writing, by a bill of sale, is void? How may we consistently adhere to the case of Kennedy v. Hull, supra, that a lease is not a chattel mortgage, while continuing to maintain that a bill of sale is a chattel mortgage? If we allude to form, a bill of sale is as unlike a chattel mortgage as a lease may be. If we refer to contractual intention of the parties, then the lease provisions in this case, as in Kennedy v. Hull, supply every characteristic of a mortgage, and are lacking only in the matter of form.

The case of Kennedy v. Hull is based upon the theory that section 1579 relates only to an instrument of a certain form, and, as we have shown above, that decision seems to be consistent with the apparent reason for the enactment of said section. On the other hand, the case of Walklin v. Horswill ignores the matter of form, deals only with the substance of contractual intention, and holds the transaction to be a mortgage because security was intended. Therein the court (24 S. D. 198, 123 N. W. 671) declared that: "If the instrument was given as security, then, as between the parties, when executed, it was a mortgage, and, no matter what form of wording they saw fit to use, they cannot avoid the effect of the provisions of the statutes relating to mortgages." ·

With that statement the court, in Walklin v. Horswill, proceeded to repudiate the decision of Kennedy v. Hull to the effect that section 1579 was applicable only to "chattel mortgages proper, generally known as such," or to "chattel mortgages as generally understood in the community." Impliedly, all equitable mortgages of personal property were invalidated, for it was declared that, whatever the words or form used, if a mortgage was intended, it must comply with the statute. Thus, when the court came to the case of McGarvey v. Prince, 32 S. D. 417, 422, 143 N. W. 380, it was confronted with section 1549, supra, declaring in substance that every transfer of personal property as security, other than a trust or pledge, should be deemed a mortgage. Evidently, the only kind of mortgage on personal property then in the judicial mind (by reason of Walklin v. Horswill) was an ordinary legal mortgage, subject to the provisions of section 1579, requiring the mortgagor's receipt for copy. At least the court ignored the case of

Esshom v. Watertown Hotel Co., supra, and avoided any specific confirmation of the doctrine of equitable liens, as later, in Savings Bank v. Mundt, stated.

Therefore the court, in McGarvey v. Prince, proceeded to create, out of a lease provision equivalent to the clause before us now, the sufficiency of a pledge. The theory of *constructive* possession of the property in the lessor was adopted in order to find a pledge, notwithstanding the clear provisions of Rev. Code, § 1607, which make the *validity* of a pledge dependent on possession in the pledgee or pledgeholder, and notwithstanding the provisions of section 1549, supra, which refer to "actual possession." By a concurring opinion in that case this transaction was said to create a trust, and the theory of estoppel also was perfunctorily applied, notwithstanding the distinction, in matters of estoppel, between instruments declared void as a matter of law and contracts which may be voidable.

One circumstance of this appeal is that we must find this lease created either a pledge or equitable mortgage. If we take the first course, according to McGarvey v. Prince, we may not only fail to liberate farm leases from the refinements of that decision, but we may confirm theories with respect to pledges which may prove vexatious in fields other than of landlord and tenant. Further, if we ignore the doctrine of equitable liens (and the cases of Esshom v. Watertown Hotel Co. and Savings Bank v. Mundt), we must do so for reasons inexplicable. The perplexity of the present is due to the fact that even verbal equitable mortgages have continued to grow in judicial approval, while the necessity has become more imperative and acute that security provisions in farm leases must be liberated from the intolerable conjecture with which they are now associated.

The conclusion which we have stated with respect to the instant case is not only consistent with recent decisions as to the existence of equitable mortgages on personal property, but the decision here, in behalf of the construction of section 1579, may be squarely based on the foundation laid in Kennedy v. Hull in 1901. But the case of Walklin v. Horswill remains a stumbling block. To find its place in the precedents of this court, that case displaced the decision of Kennedy v. Hull, by repudiating the reasoning on which Kennedy v. Hull was based, though, most inconsistently, it

approved the ultimate decision of Kennedy v. Hull. And the effect of Walklin v. Horswill was also to obscure the established doctrine of equitable mortgages. Walklin v. Horswill holds a bill of sale given as security to be a mortgage, and to be void for lack of the mortgagor's receipt for copy, *for the sole reason that security on personal property was intended by the parties.*

Bills of sale for the purpose of security are and always have been rare. They never have been of more than infrequent and occasional use. It is not imaginable that the use of bills of sale, as security on personal property, was the cause, or even contributed to the cause, of the special enactment of chapter 95, Laws of 1897, which became sections 1578 and 1579, supra. If such were the purpose of the law, reference therein would have been made to bills of sale as well as to chattel mortgages. It is utterly impossible to theorize that the Legislature had anything in mind but chattel mortgages "as commonly known and recognized," exactly as this court stated in Kennedy v. Hull. To longer approve Walklin v. Horswill, and particularly the reasoning on which it is based (and by which it became a contradiction of Kennedy v. Hull), is to perpetuate an obvious incongruity at the expense of common sense. The decision is expressly repudiated. With its removel from the precedents of this court, there remains a consistent structure of principles, from the earliest to the latest decisions, which may be thus collated:

First. The term "mortgage," in Rev. Code, § 1549, providing that every transfer of property, otherwise than in trust or pledge, made for the purpose of security, shall be deemed a mortgage, is not limited and restricted in meaning to legal or statutory mortgages, and does not preclude the validity of equitable liens and mortgages on personal property.

Second. Equitable mortgages on personal property are good in this state between the parties and those having actual knowledge of the existence and terms of the contract. Equitable mortgages include every contract so convincingly established as to show a clear intention to give a lien on specified chattels of and in the possession of the lienor that the contract ought in good conscience and equity to be enforced according to that intention.

Third. Chapter 95, Laws 1897, which became Rev. Code 1919, §§ 1578 and 1579, was intended to apply and does apply

only to chattel mortgages proper, such as are, and always have been, commonly used and recognized as chattel mortgages, being mortgages partaking of the form substantially prescribed by statute. One of the circumstances of such a mortgage is that the intention to secure a debt, or performance of an act, is itself the exclusive or primary object of the mortgage. Such intention, as shown by the instrument itself, is not a mere incident to another contractual object.

Fourth. There is one class of mortgages which, except for section 1579, would be enforceable in equity, and which, by reason of that section, are void in this state. Where the intention of the parties, as shown by the instrument of their making, is the execution of a chattel mortgage as the term is commonly understood, and where that instrument fails of validity, under the statute, for lack of the mortgagor's receipt for copy, the contract of security is entirely void, and is not enforceable in equity. One of the most common types of equitable mortgages elsewhere and commonly recognized includes instruments, obviously intended as statutory, or, let us say, common-law, mortgages, which fail to conform to statutory or common-law requirements as to form and manner of execution. Between the parties, they are uniformly upheld in equity, where the doctrine of equitable mortgages is approved. But the statute here was adopted for the exclusive benefit of the mortgagor, and for reasons above stated, which render the security void where the mortgagor's receipt for copy is lacking. The classification of the contracts or transactions to which section 1579 applies, as here and in Kennedy v. Hull made, is, in short, a description of those mortgages on personal property which may be enforced neither by legal nor by equitable remedy.

By the foregoing we do not intend to hold that the filing of a farm lease (not executed according to the manner and form of chattel mortgages) may convey constructive notice, to third persons, of lien provisions therein; nor that knowledge of the existence of a farm lease places third persons on duty to inquire as to the existence of such provisions. We are here dealing only with the parties to the contract and those having actual knowledge of its terms. The foregoing conclusions, if lacking in perfection, represent an effort to preserve the whole by the least disturbance of the parts. If counsel are still of the opinion that an equitable mort-

gage on chattels is a "hybrid," it must be observed that the doctrine is deeply rooted in the decisions of this court, and, though occasionally blighted, it has been of continuous growth. We are aware of no disposition of the subject which may be wholly satisfying. If we attempt to stand to the position that equitable mortgages on personal property are not enforceable, we must continue in fine distinctions as to what are or are not equitable mortgages, and what may be called a pledge or trust. And that effort may best be illustrated by McGarvey v. Prince, and the fact that the foundational principle of that case is, after all, the equitable enforcement of a contract for security which does not comply with legal requirements—a recognition of the principle of equitable liens.

Another question presented by appellant is whether the provision for security in the lease for 1921 covers unpaid rent due under the lease of 1920. The lease provides that "all crops growing * * * or in stack, crib, or granary on said premises shall be security for all sums due or to become due from party of the second part to party of the first part, as evidenced by book account or note held by the party of the first part." We conclude that the foregoing, as a description of the indebtedness secured, adequately refers to and covers any indebtedness of the lessee owing to the lessor at the time of the execution of the lease, which was then evidenced by note or book account held by the lessor; that failure to further describe the indebtedness secured does not render the contract fatally indefinite or uncertain. Magirl v. Magirl, 89 Iowa, 342, 56 N. W. 510, 511; Page v. Ordway, 40 N. H. 253, 256; Jones, Chat. Mtg. § 86. Whether that description of indebtedness is sufficient to cover sums not owing from the lessee to the lessor, at the time of the execution of the lease, is a question not directly involved in this appeal.

In the lease of 1921 a further provision is for a lien "upon all the personal property owned by the said second party during the term of this lease, whether said property is exempt from execution or not." We hold this provision, as an attempted description of the property covered by the mortgage, to be too indefinite to express a contractual intention which may be enforced. Of a limitless number of kinds or classes of personal property, none are mentioned, and the location of the property is not indicated. The provision creates no security. Farmers' & Merchants'

Bank v. Stockdale, 121 Iowa, 748, 96 N. W. 732, 733. Such a clause may be useful as an aid to the identification of mortgaged chattels otherwise mentioned or referred to (Slimmer v. Meade County Bank, 34 S. D. 147, 150, 147 N. W. 734), but standing alone it is not sufficient.

By the lease for the year 1920, a different situation is presented. That contract refers to a lien "upon all of the property of the said W. W. Allen used or situated upon the leased premises, whether said property is exempt from execution or not." Differing from the lease for the year 1921, the foregoing contract points to property upon the leased premises, and to property used or situated thereon. The term "used or situated," in such a provision in a farm lease, includes, in our opinion, only property the use of which is related to the maintenance and operation of the leased premises under the terms of the lease, i. e., as a farm, or property of the lessee which may acquire a situs or location at the farm by reason of, or in connection with, the use of the premises, by the lessee, for the purposes stated in the lease. Reference, however, to property "used or situated" upon the leased premises, does not include any property of the lessee which might be brought upon the premises for any mere temporary purpose (Ingram v. Cowles, 150 Mass. 155, 23 N. E. 48, 49), or for an object not related to the occupancy, maintenance, or use of the premises as a farm.

By reason of the location of the mortgaged chattels, stated in the lease, and by reason of the interpretation of the words "used or situated upon the leased premises," as above stated, we consider the clause for security in the lease for 1920·to be valid within the general rule frequently stated by this court. First Nat. Bank v. Koechel, 8 S. D. 391, 393, 66 N. W. 933; Advance Thresher Co. v. Schmidt, 9 S. D. 489, 491, 70 N. W. 646; Albien v. Smith, 24 S. D. 203, 212, 123 N. W. 675.

A further contention of appellant has required considerable effort to arrive at a conclusion which may be based on authority. Referring to its construction of the complaint, appellant argues that, where a mortgagor wrongfully sells or converts the mortgaged property, and, after receiving the proceeds, turns the same over to another, the lien of the mortgage does not attach to the proceeds in the hands of the latter, and that he need not account to the mortgagee or holder of the lien, even though he

received the money with knowledge of the contract. The distinction made by counsel is between the case of a party who participates in the act of conversion, on the one hand, and one who merely receives the proceeds from the mortgagor after his act of conversion. To support this contention a line of Iowa decisions is cited. On the other hand, respondent's counsel refer to certain allegations with respect to the agency of appellant bank for the respondent lessee, and assures us, without citation of authority, that no court of equity has ever gone so far as to say that the agent was not accountable for the proceeds of the mortgaged property under the circumstances alleged.

This suggestion is of only limited assistance in the solution of the question. We find, however, that even the Iowa decisions make this distinction: Where the party knowingly receives from the mortgagor the proceeds of the property wrongfully sold by the mortgagor, and where there is some special circumstance which implies an equitable duty upon the recipient of these proceeds to pay over the same to the mortgagee, he then becomes a trustee of the fund for the use and benefit of the mortgagee. Thus, in Jones v. Home Savings Bank, 200 Iowa, 1186, 206 N. W. 107, a bank received the proceeds of the sale by the tenant of property mortgaged to a third person. The bank had knowledge of the mortgage, and was instructed by the tenant to pay off the mortgage from the proceeds. The court distinguished that situation from that of cases cited by appellant here, and declared proper a suit in equity by the mortgagee to impress a trust on the fund in the hands of the bank. The case cites and approves Alter v. Bank of Stockham, 53 Neb. 223, 73 N. W. 667, which was of similar conclusion on a similar state of facts. The decision of Alter v. Bank of Stockham was later carried to a further point by the Nebraska court, in Farmers' State Bank v. Home State Bank, 106 Neb. 711, 184 N. W. 170, in this: There the defendant bank, being held as a trustee, defended on the ground that it no longer held, but had disbursed, a part of the fund. The court declared that this showing constituted no defense. It would thus appear that a suit for money had and received would lie, for, as a matter of common text (41 C. J. pp. 28, 38), such an action is governed by equitable principles. And see Finch v. Park, 12 S. D. 63, 80 N. W. 155, 76 Am. St. Rep. 588; Siems v. Pierre Savings Bank, 7 S. D. 338, 64 N. W. 167.

It is notable in the case at bar that the complaint alleges debt, as well as damage, but the prayer is for an accounting, and, in general, for equitable relief. We conclude that the pleading is good for an accounting in equity for the following reasons: It is alleged that the defendant, appellant, was the agent of respondent lessor in leasing the premises and in looking after the collection of rents. Although it is not alleged that appellant received the proceeds of the property in its capacity as agent, or for the use and benefit of respondent, we conceive that the duty of appellant to look after the collection of rent, for respondent, is fully equivalent to the instruction given by the mortgagor to the defendant in the Iowa and Nebraska cases above cited. There it was the equitable duty of the party receiving the money to pay the mortgage from the fund because of the mortgagor's instructions. In this case, a fiduciary relation, between the principal and agent, came into existence by the very circumstances alleged. If the agent had become aware of an attempt by the lessee to wrongfully sell the property, or convert the proceeds thereof, it would have been its duty to frustrate that attempt. It could not actively participate in a transaction which, as to its principal, was a breach of trust.

■ ■ "A principal cannot go into a court of equity to compel his agent to account on the mere ground of the relation of principal and agent, for it is evident that in many of such cases he has an adequate remedy in a court of law. * * * But where the relation existing between the principal and his agent is of a fiduciary character, matters of confidence and trust being involved, as distinguished from the ordinary relation of principal and agent * * * the principal may maintain a bill in equity for an accounting." 1 Clark & Skyles, Law of Agency, § 426; 6 Clark & Skyles, §§ 404, 405. "The law is also well settled that an agent will not be allowed to acquire rights adverse to those of his principal by failing to perform the duties which he owes to his principal, * * * and, if he does so, he will be held to hold such rights or interests in trust for his principal." Id. § 415.

■ Finally, appellant contends that the complaint is demurrable for lack of joinder of the tenant, Allen as a necessary party. But, as the complaint of the principal is for an accounting by his agent of funds received in trust for the principal, no reason

appears, and no cited authority suggests, that the absence of the tenant, Allen, as a party is fatal to the pleading. In a suit of this character, between these parties, the complaint is not within the provisions of Rev. Code 1919, § 2348, subd. 4, which refers to a defect of parties plaintiff or defendant.

The order appealed from is affirmed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.

BROWN, J., absent.