STATE of South Dakota, Plaintiff
and Respondent,

v.

Richy JAQUES, Defendant and
Appellant.

No. 11903.

Supreme Court of South Dakota.

Argued March 22, 1977.

Decided July 14, 1977.

Rehearing Denied Aug. 16, 1977.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Michael A. Lyons, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

The principal issue on this appeal is whether or not a defendant in a criminal prosecution for arson can effectively silence the state's star witness against him by marrying her before trial and thereby preclude the state from calling her as a witness or using her testimony given at a preliminary hearing. The state concedes that she cannot be called as a witness without her husband's consent. We hold that her previous testimony is likewise inadmissible, and reverse.

The defendant was accused of arson after investigation was made of a fire that occurred in Sioux Falls in the early morning hours of July 26, 1975. The fire was in a home rented by one Illa Hammond wherein the defendant was also residing. At the defendant's preliminary hearing Illa Hammond was called as a witness on behalf of the state and testified that she and the defendant had had an argument earlier that night, that she had called the police and complained about the defendant and then fled to the home of a friend. She further testified that she received a telephone call from defendant threatening future retaliation in the form of burning everything she had if she ever called the police on him again. The conversation end-

ed with the cryptic statement "I've got to get out of here, the house in on fire."

Subsequent to the preliminary hearing and prior to the trial the defendant and Illa Hammond were married thereby formalizing the arrangement under which they had been living for some two years during which period the defendant had fathered a son by Miss Hammond.

Prior to the trial, anticipating that the defendant would object to the state introducing any evidence against him by calling his now wife to testify, the state made an oral pretrial motion to endorse on the information the name of the court reporter who transcribed the preliminary hearing for the purpose of foundational testimony for introducing the transcript of the preliminary hearing testimony of Illa Hammond, now Illa Jaques. The state's attorney asked for a ruling whether this testimony of Illa Hammond would be admissible and stated that it was absolutely critical to the state's case and if ruled inadmissible the state would have no alternative but to dismiss the case. Both sides filed briefs and the court by letter ruled that the preliminary hearing testimony was admissible because the witness was not available, although no formal order to that effect was ever entered. At the trial, out of the presence of the jury, the state's attorney asked the defendant if he planned to exercise the privilege against his wife's testifying against him. Defense counsel replied that they would not give consent whereupon the trial judge ruled the state could introduce the preliminary hearing testimony because the witness was unavailable.

Because the defense counsel refused to stipulate to foundation for the transcript the state moved and was granted leave to endorse the name of the court reporter to the information. In the course of the trial the reporter was called as a witness and laid the foundation for the introduction of the transcript of the preliminary hearing, particularly the testimony of Illa Hammond. Defense counsel then, outside the presence of the jury in the court chambers, objected to proceeding with the reading of

the testimony on the basis that there was no proper evidence or foundation showing that Illa Hammond is unavailable or that Illa Hammond and Illa Jaques are one and the same person. In the course of the discussion of the exercise of privilege the court stated:

"Okay. And I am going to, of course, allow the transcript to be read eventually. That is my present feeling and the same as we did this morning on a question and answer. I realize you have objected to it and, certainly, you do have a standing objection in the record to that point."

The court then went on to discuss the question of the foundation as to identity. The state remedied the lack of identity foundation by asking and receiving leave to endorse on the information the name of a police officer who, when called to testify, testified that he was related to Illa Hammond and knew as a matter of family history that she was now Illa Jaques. After the officer testified the state again renewed the request to introduce the testimony of Illa Hammond via preliminary hearing transcript which the defense counsel again objected to on the basis of identity not being established. Objection was overruled and the state's attorney then advised the court that he had one of his deputies present, that he had marked as that portion of the preliminary hearing transcript testimony of Illa Hammond and marked it as Exhibit 9 and would like to have the deputy state's attorney refer to this as she is reading the answers to the questions which I propound to her. To this defense counsel stated he had no objection. The deputy state's attorney then took the stand and read into the evidence the testimony of Illa Hammond.

At the conclusion of the trial the jury returned a verdict of guilty of arson and the court entered sentence imposing a five-year prison sentence. From this judgment and verdict the appeal is taken. The principal error urged by the appellant is the admission of the preliminary hearing testimony of Illa Hammond Jaques as a violation of the defendant's privilege. Secon-

darily they argue that the court should have granted a motion to dismiss based upon insufficiency of the evidence.

 Under South Dakota Law "no person offered or called as a witness in any action or special proceeding in any court or before any officer or person having authority to examine witnesses or hear evidence shall be excluded or excused from testifying * * * because such person is a husband or wife of a party thereto * * * except as provided in § 19–2–1 to 19–2–5, inclusive."[1] The section referred to above, 19–2–1, reads in essence:

"A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband without his consent; nor can either, during the marriage or afterward, be without the consent of the other examined as to any communication made by one to the other during the marriage; * * * *"

The statute goes on to list certain exceptions which the parties agree are not applicable here. This statute actually sets forth two common law doctrines of privilege. The first, being the doctrine of incompetency to testify either for or against the other spouse in any proceeding, civil or criminal, which rule is based partly on the common law doctrine that husband and wife are but one person and consequently that their interests are identical and partly upon the grounds that public policy demands that those living in a marriage relation should not be compelled or allowed to betray the mutual trust and confidence which such relation implies. The second doctrine is in the nature of a privilege of either against the other's disclosure of communications. Professor Wigmore stresses the distinction between the privilege for communications and the privilege against adverse marital testimony, one of which distinctions is appropriate to the rules as laid down in our statute, that is that the rule of marital disqualification prohibits the spouse's adverse testimony regardless of the source of

knowledge while the privilege against communications covers only knowledge obtained through the confidence of the marriage relation.[2] It is the first privilege, the privilege of marital disqualification that we are dealing with in this case. The rule and soundness of the reasons advanced for it have long been condemned by commentators, has been abrogated by statutes, and current decisions indicate a trend to narrow the implication of the rule of incompetency insofar as possible under prevailing statutes.[3]

Our problem here does not lie in whether the rule is applicable or not because the state has conceded that under the statute and under our decisions Illa Hammond Jaques could not be called to the stand and required to testify against her husband without his consent. At issue here is the state's rather novel resolution of the problem created by the marriage of the defendant and the state's star witness, that is, the introduction of her preliminary hearing testimony given before she became Mrs. Jaques on the theory that she was now an unavailable witness and therefore her prior testimony was admissible.

 The remedy the state urged on the trial court was characterized as one of the exceptions to the hearsay rule that evidence may be received in pending cases in the form of written transcript or oral report of witness's previous testimony if the witness is presently unavailable and the former testimony was given under circumstances affording the opponent an adequate opportunity to cross-examine.

This court has previously ruled that:

"The testimony given by a witness on the preliminary examination or on a former trial is not admissible as substantive evidence, unless it is satisfactorily shown by the side offering the evidence that such an examination or trial was had in a judicial tribunal; that the witness was sworn and testified; that accused was present and had an opportunity for cross-

---

1. SDCL 19–1–1.

2. VIII Wigmore, Evidence, § 2334.

3. 3 Jones on Evidence, 6th Ed., § 20:47.

examination; that the parties and the issues were substantially the same as in the case on trial; and that the witness has since died, or has become insane or has left the state permanently or for an indefinite time, or is unable to attend and testify on account of sickness or physical disability, or after due diligence cannot be found." *State v. Carr,* 1940, 67 S.D. 481, 484, 294 N.W. 174 at 175, quoted verbatim in *State v. Nelson,* 1974, 88 S.D. 348, 220 N.W.2d 2 at 7, and *In The Matter of the Neglect and Dependency of D. T.,* 1975, S.D., 237 N.W.2d 166 at 170.

While we concur wholeheartedly with the rule, we hold however that it does not apply so as to effect the remedy the state seeks in this case, for it is generally held that testimony given by a witness at the first trial, if used at a subsequent trial, is open to all proper objections and exceptions which would exclude the testimony of the witness to the same matters, particularly with regard to questions of competency and relevancy.[4] There can be no question but what the testimony of the witness being the spouse of the defendant was not competent unless he waived his privilege against her testifying.

This is clearly distinguishable from the line of cases and the annotation cited by the state in support of their position for the annotation and cases relate to the claim of privilege *by a witness* (emphasis added) as justifying the use in criminal case of his testimony given on a former trial or preliminary examination. In a number of states the privilege against testifying is given to the spouse who is called as the witness. In such case obviously there could not be a question of competency with respect to the defendant by reason of the witness refusing to testify and invoking his or her privilege.

Our decision finds support under 97 C.J.S. Witnesses, wherein it is stated:

"The competency of a spouse to testify is governed by his or her marital status at the time of trial and proffer of testimony. Although a marriage was for the express purpose of suppressing testimony, the rule forbidding one spouse to testify against the other applies. Where a witness is married at the time his or her testimony is proffered, the witness may not testify for or against the other spouse even with respect to matters occurring prior to marriage, and a husband or wife is not rendered competent to testify by the fact that the testimony would relate wholly to matters as to which the witness' knowledge was acquired before the marriage. \* \* \*" 97 C.J.S. Witnesses § 77.

"Where the husband or wife is incompetent, it is ordinarily held improper to introduce spouse's testimony by the use of the record of another case or proceeding in which the spouse testified, \* \*

Testimony of the wife before a grand jury may not be used against her husband in his prosecution, either as original evidence or for purposes of impeaching on cross-examination a wife who has testified for her husband at his trial." Ibid., § 86.

■■■■ The general rule as to the time for and sufficiency of objections to evidence applies to objections to privileged communications. Where a question clearly calls for an answer that is incompetent as privileged, an objection at the time that the question calls for confidential matters arising from a marital relation is proper and seasonable. Where objection has been properly and seasonably made, it is not necessary to repeat the objection, or, at the conclusion of the witness' testimony, to move that it be stricken out. One may not rely on the admission of privileged communications as ground for reversal where the record on appeal does not show the making of objection on a definite ground; but although the objection made may not have been precisely stated as having reference to the incompetency of the witness instead of the incompetency of the testimony, it is not fatal where the trial court was apprised that reliance was placed on the statute relating to privi-

---

**4.** 29 Am.Jur.2d Evidence, § 742.

leged communications.[5] While the counsel for the defendant made no objection at the trial when the state put the deputy state's attorney on the stand and proceeded to read the preliminary hearing testimony of Mrs. Jaques we find that in the course of the pretrial proceedings regarding the introduction of the testimony he had made adequate objection to apprise the court sufficiently that defendant was relying on the statute relating to privileged communications and the state does not suggest in its brief for argument that the objection was not properly preserved.

Because we agree with the appellant that the testimony of Illa Hammond Jaques was not admissible in any form without the defendant's consent and reverse and remand the case upon that issue, we need not consider the second issue of insufficiency of the evidence.

WOLLMAN, J., concurs.

ZASTROW, J., concurs specially.

DUNN, C. J., and PORTER, J., dissent.

ZASTROW, Justice (concurring specially).

I concur in the opinion of Justice Morgan. The South Dakota statutes preceding SDCL 19–2–1 have been interpreted as making a spouse incompetent as a witness unless the other spouse consents to such testimony. *State v. Burt*, 1903, 17 S.D. 7, 94 N.W. 409; *State v. Damm*, 1933, 62 S.D. 123, 252 N.W. 7; *State v. Goff*, 1936, 64 S.D. 80, 264 N.W. 665. See also, *United States v. Crow Dog*, 1882, 3 Dak. 106, 14 N.W. 437.

It is surprising that in spite of the criticism of spousal incompetency by Wigmore & McCormick (and Bentham long before them) that it survives and was reaffirmed in *Hawkins v. United States*, 1958, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125. Even with

the many decisions which have allowed criminal defendants to effectively prevent prosecution by marrying a complaining witness, our legislature has not seen fit to make any significant amendments to SDCL 19–2–1, and it remains basically unchanged from § 5260(1) of the 1887 Territory of Dakota Compiled Laws.*

Since the legislature has made no change in the statute and the "preservation of the marital relationship" apparently continues to "outweigh the disadvantages to the administration of justice which the privilege entails" (see *Wolfle v. United States*, 1934, 291 U.S. 7, 54 S.Ct. 279, 280, 78 L.Ed. 617), there seems to be no reason to circumvent the spirit of the statute by a procedural rule simply because we find the rationale behind it questionable.

Although the result here may be offensive to some, there have been results just as offensive in the past, and yet the statutory privilege has been unchanged. Because it is in statutory form, it is up to the legislature to decide whether the privilege should be modified. However, the legislature in the recent past seems intent on creating more privileges rather than restricting them. Every privilege, be it marital, doctor-patient, psychologist, psychotherapist, social worker, school counselor, etc., has the effect of making testimony unavailable in the judicial fact-finding process. That is a question of public policy to be decided by the legislature.

DUNN, Chief Justice (dissenting).

I believe the preliminary hearing testimony of Illa Hammond was admissible under the former testimony exception to the hearsay rule. The nub of the issue is whether the claiming of a privilege renders a witness "unavailable" for purposes of the hearsay exception. The general rule is that exercise of a privilege *does* render a witness

---

**5.** 81 Am.Jur.2d Witnesses, § 145.

* "1. A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband without his consent; nor can either, during the marriage, or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this subdivision does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

unavailable. McCormick on Evidence, § 253 at p. 612 (E. Cleary Ed., 2d Ed. 1972); Federal Rules of Evidence, Rule 804(a)(1); Wharton's Criminal Evidence, 13th Ed., § 651. These sources cite the use of the inter-spousal privilege as one of the circumstances in which the issue often arises, but make no distinction as to whether the defendant or the witness claims the privilege. Since the other requirements set out in *State v. Carr*, 1940, 67 S.D. 481, 294 N.W. 174, and *State v. Nelson*, 1974, S.D., 220 N.W.2d 2, are met in this case, the former testimony is admissible.

Although the former testimony would be open to objection when read at trial, an objection as to competency should not be sustained. McCormick devotes a chapter of his Evidence hornbook to the distinction between rules of privilege and rules of incompetency. McCormick on Evidence, Ch. 8 at 51 (E. Cleary Ed., 2d Ed. 1972). He argues convincingly that rules of incompetency have as their purpose to facilitate the ascertainment of the facts by guarding against evidence which is unreliable or calculated to prejudice and mislead, while the privilege rules are aimed at protecting certain social relationships, often at the expense of the facts needed for the administration of justice. The reading of the former testimony of one who is the defendant's spouse at the time of trial should not be objectionable as being incompetent in light of this distinction.

The threats of the defendant to burn down the house of Illa Hammond combined with the testimony of Dr. Nelson that there was a "human factor" involved in the fire provided enough evidence to withstand the defendant's motion to dismiss. *State v. Bates*, 1955, 76 S.D. 23, 71 N.W.2d 641; *State v. Best*, 1975, S.D., 232 N.W.2d 447.

I would affirm the conviction.

I am authorized to state that Justice Porter joins in this dissent.

PORTER, Justice (dissenting).

As a court of law we are bound to apply to the case before us the applicable statuto-ry law of this state, and the precedent established by previous decisions of this court. Where neither statute nor our own precedent supply the answer, we may seek guidance from the words and reasoning of the courts of other jurisdictions and the text writers, but these are not binding precedent. We are obligated to fashion our own precedent to apply to the facts. We seek the precedent which best accords with reason and justice under the circumstances presented.

The *testimony* at issue here was not given by a *wife* but by an unmarried woman. Thus it is facially not within the bar of SDCL 19–2–1 which in pertinent part provides:

> A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband without his consent; * * *.

Even though SDCL 19–2–1 apparently first came into our statutes in 1887, this court has never applied it to bar testimony given as in this case. *State v. Burt*, 17 S.D. 7, 94 N.W. 409 (1903); *State v. Damm*, 62 S.D. 123, 252 N.W. 7 (1933); and *State v. Goff*, 64 S.D. 80, 264 N.W. 665 (1936) each involved a case in which the viva voce testimony of a *wife* was given or offered at the trial of the husband. It is plain enough that if the spouse of this defendant had been called as a witness at the trial and required to give testimony over his objection, SDCL 19–2–1 would require reversal. But that is not the case here. Defendant's wife, Illa, has given no testimony against him during their marriage. The issue is not whether we favor the marital privilege [SDCL 19–2–1]. Instead the issue is whether the marital privilege applies at all to the facts here. We are free to adopt a precedent which will resolve the issue since the language of SDCL 19–2–1 does not expressly bar the testimony here, and we have no pertinent binding precedent of this court.

Did the legislature intend that testimony already given by an unmarried woman against a defendant should, upon the subsequent marriage of the two, become, simply by operation of SDCL 19–2–1, the testimo-

ny of a spouse. "There should be no strained construction of the statute to effect a result so easily obtained by plain enactment if needed or wanted." *State v. Dailey*, 57 S.D. 554, 565, 234 N.W. 45, 50 (1931). If the legislature intended to bar *testimony* given *before* marriage, it could have said so.

"It is a cardinal rule of interpretation that a statute must be construed with reference to the objects intended to be accomplished by it." *Dorman v. Crooks State Bank*, 55 S.D. 209, 219, 225 N.W. 661, 665 (1929); see also *Stocker v. Stocker*, 112 Neb. 565, 569, 199 N.W. 849, 851 (1924). The object of the legislature in enacting SDCL 19–2–1 [in substance, in 1887] was to protect the marital relation. This was the policy underlying the common law rule, as the court recognized in *People v. Hayes*, 140 N.Y. 484, 35 N.E. 951, 954 (1894):

> The rule * * * was founded upon a wise public policy, adopted and pursued for the purpose of encouraging to the utmost that mutual confidence between husband and wife, which is the strongest guaranty of a happy marriage. To this end the common law provided that all communications between husband and wife, which were of a confidential nature, should be kept inviolate, and should not be drawn from either party by any process of law. [Citations omitted]. The law appreciated the fact that even truth itself might be pursued too keenly, and might cost too much. The general evil of infusing reserve and dissimulation between parties occupying such relations to each other would be too great a price to pay for the chance of obtaining and establishing the truth in regard to some matter under legal investigation.

When Illa testified at the preliminary hearing, she was unmarried, and had never been the wife of defendant. She testified in the presence of defendant, and was cross-examined by his attorney. Illa Jaques took no part when the transcript of the preliminary hearing testimony of Illa Hammond was read to the jury at the trial.

Everything Illa did in this case which could conceivably have any effect upon the marital relation she did before her marriage to defendant. Defendant knew all of this when he married her. Illa did nothing in this case after her marriage which could affect the marital relation. Should we subvert the noble purpose underlying the marital privilege by allowing this defendant to raise it as a shield?

"The privilege suppresses relevant testimony, and should be allowed only when it is plain that marital confidence cannot otherwise reasonably be preserved. Nothing in this case suggests any such necessity." *Wolfle v. United States*, 291 U.S. 7, 17, 54 S.Ct. 279, 281, 78 L.Ed. 617, 621–22 (1934).

The testimony of Illa Hammond was properly received, and the judgment upon the jury verdict of guilty should be affirmed.