STATE, Respondent, v. MATHIS, Appellant.

(201 N. W. 153.)

(File No. 5478.   Opinion led December 5, 1924.)

1.  Homicide — Evidence — Dying Declarations — Evidence Held to Show Deceased Believed His Death Was Inevitable, and Immediate.

   Evidence held to show deceased, shot by accused, believed his death was inevitable and immediate when he made certain statements.

2.  Criminal Law—Homicide—Dying Declarations—Statements of Deceased Held Admissible as Dying Declarations and as Part of Res Gestae; "Involuntary."

   Statements of deceased after he was shot by accused held admissible as dying declarations and as part of res gestae within Laws 1921, c. 230, Secs. 1, 2; the mere fact that some of such statements were made in answer to questions not rendering them "involuntary."

Appeal from Circuit Court, McPherson County; HON. J. H. BOTTUM, Judge.

Stanley Mathis was convicted of murder, and he appeals from the judgment and order denying new trial. Affirmed.

*Van Slyke & Agor,* of Aberdeen, for Appellant.

*Buell F. Jones,* Attorney General, and *Benj. D. Mintener,* Assistant Attorney General, for Respondent.

Appellant cited: State v. Swenson, (S. D.) 129 N. W. 119; State v. Deuble, (Iowa) 38 N. W. 383; People v. Kessler, (Utah) 45 Pac. 97; Chicago, West Div. Ry. Co. v. Becker, 15 A. S. R. 144 (Ill.); People v. Dewey, (Ida.) 6 Pac. 103.

Respondent cited: Maddock v. U. S., 146 U. S. 140, 36 L. ed. 917; Westbrook v. People, 126 Ill. 81, 18 N. E. 304; State v. Perigo, 80 Ia. 37, 46 N. W. 399; State v. Swenson, (S. D.) 129 N. W. 119; State v. Smith, (Okla.) 114 Pac. 350; Williams v. State, 168 Ind. 87; People v. Hayes, (Cal.) 99 Pac. 386; McQueen v. State, 94 Ala. 50; State v. Elkins, 101 Mo. 344; Greenleaf on Evidence, 14th Ed., Sec. 149; State v. Ferney, (Kan.) 21 Pac. 213.

GATES, J. Defendant was convicted of the murder of Clarence Berry, the night policeman of Leola. The assignments of error upon this appeal relate solely to the admission in evidence of declarations made by Berry a few minutes after the shooting. It is not urged that the evidence was insufficient to sustain the verdict.

[1, 2] Berry was shot twice in the abdomen at about half past 11 on the night of December 11, 1921. No one was present except defendant, his wife, and Berry. Immediately thereafter Berry walked about 400 feet to the residence of Peter Schuchardt and called out. Mr. and Mrs. Schuchardt had retired for the night, but immediately arose and partially dressed. Schuchardt found Berry at the door, dragged him in, and laid him on the floor. A doctor was called in, and after an examination Berry was rushed to a hospital at Aberdeen. He died about 15 minutes before 6 on the morning of December 13.

The objections of appellant relate to what the witnesses Schuchardt, Mrs. Schuchardt, and the doctor told as to Berry's statements to them. It is claimed that such statements were neither admissible as a part of the res gestæ nor as dying declarations.

Following are the questions and answers objected to in the testimony of Schuchardt and which are assigned as error:

"Q. And what happened at the door? What did he say? A. He said: 'I am shot. I am done for. He got me.' Q. What did you say, if anything? A. I asked him who shot him. Q. What did he say? A. He said, 'Mathis.' Q.What did you say or do then? A. I said: 'My God! What will I do?'" (This answer was stricken out by the trial court.) "Q. What, if anything, did he say in reference to whether he was in pain? A. He mention several times that he was in severe pain. * * * Q. What did he say? A. That he wished the doctor would come. * * * Q. What did he say?" (We find no answer to this question in the printed record.) "Q. Did he make any statements in reference to pain? A. Yes, sir. Q. At the time, referring to the time when he made the statement to you, what did he say or do in reference to his pain? A. He complained of terrible pain. Q. You mean? A. That is, he was kind of rolling on the floor in agony and pain."

Following are the portions of the testimony of Mrs. Schchardt objected to and which are assigned as error:

"Q. What did you hear?" (We find no answer to this question in the printed record.) "Q. What further did he tell you about what happened?" (The witness then detailed Berry's statements as to the shooting.)

Following are the portions of the testimony of the doctor objected to and which are assigned as error:

"Q. What did he say? A. I said, 'Berry, what is the matter?' and he said, 'Mathis has shot me.' Q. What did Berry say to you about that (the gun)? A. He said, 'Give me my gun and let me finish it.' Q. Then, after your examination of him and giving the hypo as you stated, what did you do?" (We do not find any answer to this question in the printed record, nor do we find the question anywhere except in the assignment of errors.)

Chapter 230, Laws 1921, provides:

"Section 1. Dying declarations are statements of material facts concerning the cause and circumstances constituting the res gestæ of any of the following felonies, to wit, homicide, rape, as rape is defined in subdivisions 3 and 4 of section 4092 of the South Dakota Revised Code of 1919, and abortion, as abortion is defined in section 4116 of the Revised Code of 1919, made by the

victim voluntarily while sane and under the fixed and solemn belief that his death is inevitable and near at hand.

"Sec. 2. In all prosecutions for the following felonies, to wit, homicide, rape, as rape is defined in subdivisions 3 and 4 of section 4092 of the South Dakota Revised Code of 1919, and abortion, as abortion is defined in section 4116 of the Revised Code of 1919, the dying declarations of the deceased, as defined in the foregoing section, are always admissible in evidence, provided, the deceased would be a competent witness if living. All such declarations are also admissible in behalf of the defense."

It is urged that the statements of Berry were not voluntary within the meaning of that chapter, and that it was not shown that Berry was under the fixed and solemn belief that his death was inevitable and near at hand. We think these points are without merit. Simply because some of the statements of Berry were made in answer to questions does not cause them to be involuntary. Greenleaf, Ev. (14th ed.) §159; Jones, Ev. § 335; Chamberlayne, Modern Law of Ev. §2842. And we think the evidence clearly shows that Berry believed his death was inevitable and immediate. Wigmore, Ev. (2d ed.) § 1442. We think the statements of Berry were admissible both as dying declarations and as a part of the res gestæ.

The judgment and order denying new trial are affirmed.

Note.—Reported in 201 N. W. 153. See, Headnote (1), American Key-Numbered Digest, Homicide, Key-No. 203(3), 30 C. J. Sec. 504; (2) Criminal law, Key-No. 366(4), 30 C. J. Sec. 500; Homicide, Key-No. 207, 16 C. J. Sec. 1119.

On creditability and weight to which dying declarations are entitled, see notes in 56 L. R. A. 445; 52 L. R. A. (N. S.) 152