STATE, Respondent v. WEINANDT, Appellant

(171 N.W.2d 73)

(File No. 10553. Opinion filed October 2, 1969)

**Timothy J. Nimick,** Sioux Falls, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Edward M. Blando,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

ROBERTS, Judge.

Defendant, Delores Weinandt, and codefendants Steven Martin, Rosalinda Assid and Bonnie Graves, were jointly charged by information with the crime of assaulting another with intent to inflict great bodily injury in violation of Chapter 48, Laws 1961.[1] Defendant Delores Weinandt was found guilty by jury verdict and sentenced to imprisonment for a term of four years. The other defendants pleaded guilty.

On appeal the defendant has set forth and argued the following claimed errors: (1) That the evidence was insufficient to justify the verdict of the jury; (2) that the court erred in refusing to further instruct the jury; and (3) that the court erred in permitting witnesses to testify in rebuttal.

The complainant, Marjorie Roesler, testified in part as follows: "I live at 830 North Menlo, here in Sioux Falls. About 3:00 o'clock in the morning of December 15 I received a telephone call. The caller identified herself as Dot. She told me to come over to 415 West Fourth Street and pick up my husband. That he was drunk and passed out and they would like to get him out of the house.

---

1. This statute (SDCL 1967, § 22-18-12) provides: "Whoever assaults another with intent to inflict great bodily injury shall be punished upon conviction thereof by imprisonment in the state penitentiary for not less than one year, nor more than five years, or in the county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

I called the police department and told them about the call. I told them that I was going to that address and asked them to check because I thought that I might have some trouble. I parked the car in the alley next to the house. I told the police that I was going to leave the lights on and the motor running. I did that. I saw a man and a woman lying on the couch in the living room. I didn't believe it to be my husband. After I looked at the man on the couch, Steve Martin grabbed me and took me into the back bedroom. Linda and Steve were trying to hold me down and hold my mouth shut. I heard a knock at the door and overheard someone say it's the police. Steve said: 'You called the cops on us didn't you.' I was real scared and said: 'No, I didn't.' Linda Assid and Bonnie Graves beat me up on my face with their fists. They then cut my hair off. They ripped off my blouse and then decided to play a game of tic tac toe on my back. Delores Weinandt was in the room and removed my bra. She took it. Delores said that she previously had killed someone else and that she could kill me too if she wanted to. Somebody had driven my car into the back yard of the house and the lights had been shut off and the motor was off. Exhibit No. 1 is a photograph of me taken at the police department on the morning of December 15 and the shortness of my hair was due to the incident that I have told you about. Exhibit No. 2 is a picture of marks on my back resulting from the tic tac toe game. Exhibit No. 6 is a police department picture of the mark where I was assaulted with a scissor in my stomach. Steve Martin did that after I had been beaten, my hair had been cut off and the game on my back had been played."

Richard Byllsby, a police patrolman, gave the following testimony: "About 4:10 o'clock the morning of December 15, 1967, I was dispatched to the residence at 415 West Fourth Street. I asked the young lady answering the door if we could help. She said that she had not called the police and left. Delores Weinandt then came to the door. She indicated that she had called the police department and that she was responsible for the car in the driveway. She said that matters were under control and that the party she wanted help with would be taken care of. This was about the extent of the conversation."

Defendant testified in part as follows: "When Marge Roesler entered the house, she started to go to the couch to see if that was Elmo (her husband). There was a knock on the door. It was the police. I told the police officer that everything was all right. It probably was a matter of too much drinking. I told him that I would take care of the car. I parked it behind the house. Marge hit Bonnie Graves and grabbed the scissors from the TV and started a lot of action. I did not during the course of the evening strike or threaten her. I had walked in and out of the bedroom. I did not take Marge's bra or attempt to do so. Steve, Linda and Marge were still at the house when Bonnie and I left at approximately between five o'clock or quarter after. I did not observe any hair cutting."

The state's attorney applied for leave after defendant had rested to endorse on the information the name of Steve Martin. Counsel stated that at the time of the filing of the information Martin was a codefendant and that as state's attorney he had no reason to believe that this witness could be called to testify. Permission over objection was granted. This witness in rebuttal testified: "I entered this morning a plea of guilty. I was at 415 West Fourth Street during the early morning hours of December 15, 1967. Marge Roesler arrived there about 3:00, 4:00 o'clock. The police arrived within three minutes, somewhere in there after Marge arrived. Dot Weinandt was there at the time and did not leave except to park the car until about 5:00 o'clock or so. I grabbed Marge when the police came and held her mouth so she couldn't get in touch with them. I saw Delores Weinandt stab Marge Roesler in the stomach with the point of a scissors. Linda and Delores removed Marge Roesler's bra."

It appears that much of the above testimony is conflicting. It is the function of the jury to resolve conflicts in the evidence, determine the credibility of witnesses and the weight of their testimony. State v. Painter, 70 S.D. 277, 17 N.W.2d 12; State v. Bates, 76 S.D. 23, 71 N.W.2d 641; State v. Nelson, 80 S.D. 574, 129 N.W.2d 54. The jury evidently believed the state's witnesses. This court cannot, of course, interfere with the discretion of the jury to believe or disbelieve any witness.

Defendant contends that the trial court erred in overruling her motion for direction of verdict of acquittal made when the state rested and renewed at the close of all the evidence on the grounds that the mere fact that she was in the presence of others at the time of the commission of an offense by them did not render her guilty and that the evidence was insufficient to show that she aided and abetted in its commission.

■ SDCL 1967, § 22-3-3 makes guilty as principals "all persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, though not present." The trial court instructed the jury that "The distinction between an accessory before the fact and a principal in a case of felony  *  *  *  is abrogated." One who counsels, aids or abets in the commission of an offense may be tried and convicted as if he had directly committed such offense. We agree that mere presence at the scene of a crime is not enough to prove that an accused committed an offense or aided and abetted in its commission. State v. McCreary, 82 S.D. 111, 142 N.W.2d 240. Presence of an accused, however, at the commission of a felony, together with evidence of companionship and conduct before and after an offense is committed, may warrant an inference of guilt. 22 C.J.S. Criminal Law § 88(2)d; State v. Peck, 82 S.D. 561, 150 N.W.2d 725.

■ The contention that the record discloses conclusively that defendant was a mere bystander is without merit. The jury could have found that the crime charged was committed with her assistance. There is evidence that she misinformed the police concerning the telephone call and the presence of Mrs. Roesler in the house and thus enabled Steve Martin forcibly to prevent the victim from contacting the police. The record also contains evidence of direct participation. There was evidence that defendant struck the victim in the abdomen with a pair of scissors and assisted in removing the victim's bra. We conclude that there was sufficient evidence presented by the State to justify the verdict of guilty.

■ Defendant predicates error upon proceedings had after the case had been submitted to the jury. SDCL 1967, § 23-45-3 provides that after the jury has retired for deliberation, if there be a disagreement among them as to any part of the testimony or if they desire to be informed upon a point of law, jurors may request to be brought into court. Information required must be given in the presence of or after notice to the state's attorney and the defendant or his counsel. The jury retired about 4:30 in the afternoon and about three and a half hours later submitted to the court through a bailiff a written request for a definition of the word "abrogated". After the jury had been recalled into court and instructed in the presence of the defendant, her counsel and a deputy state's attorney as to the meaning of the word "abrogated", a juror stated that the jury had another question and handed to the court an inquiry reading: "If defendant did not know that the victim was going to be beaten, and cut at the time the police were there, would she be an accessory before the fact?" The court declined to answer the question asked and suggested that the jurors again read the instructions and continue with their deliberation.

Appellant asserts that the statute cited is mandatory and failure of the court to give information or additional instruction on request is reversible error. If the court in the exercise of a sound discretion concludes that information or further instructions are not required, it may properly refuse such a request. We have examined the instructions as given and find that they sufficiently covered the matter to which the inquiry related.

■ As above mentioned the state's attorney after defendant had rested applied for leave to endorse the name of Steve Martin on the information. The state also called Marlene Berger, matron at the Minnehaha County jail, as a rebuttal witness and asked leave to endorse her name on the information. Permission was granted. These witnesses were called and examined in rebuttal. In State v. Butler, 71 S.D. 455, 25 N.W.2d 648, the rule is stated that the state may call and examine in rebuttal witnesses whose names are not endorsed on the information. Since endorsement was not required, no error was committed.

The judgment is affirmed.

All the Judges concur.