STATE, Respondent v. NELSON, Appellant
(220 N.W.2d 2)
(File No. 11311. Opinion filed July 11, 1974)
Order denying petition for rehearing August 16, 1974

Kermit A. Sande, Atty. Gen., Marvin Truhe, Asst. Atty. Gen., Pierre, for plaintiff-respondent.

Thomson, Wylde, Nordby, Friedberg & Rapport, St. Paul, Minn., Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant-appellant.

RENTTO, Judge.*

* Retired Supreme Court Judge acting under authorization pursuant to S.L.1974, Ch. 154, § 4.

Defendant James LeRoy Nelson appeals from a judgment entered on a jury verdict finding him guilty of manslaughter in the second degree. It involved the death of Wayne Henry Sherwood, an inmate in the South Dakota penitentiary, on October 4, 1971, from strychnine poisoning. He was sentenced to a term of twenty years to be served concurrently with a prior sentence he was then serving in that institution. It is inferrable from the record that the prior sentence was imprisonment for life on another homicide.

As grounds for reversal of the judgment he urges that:

1. The trial court erred to his prejudice in receiving hearsay statements attributed to the deceased which were not admissible as dying declarations, and

2. The evidence is insufficient to justify the verdict, and

3. The trial court erred to his prejudice in receiving in evidence the preliminary hearing testimony of an absent witness.

He also complains that our second degree manslaughter statute, SDCL 22-16-20, is unconstitutionally vague and that it was error to allow the jury to consider manslaughter as a lesser offense necessarily included in the prosecution which was one for murder. These two matters are not urged as reversible error but are discussed only as a part of the totality of circumstances.

The information filed against the defendant charged him and Patrick Bernard Pickering, another inmate, jointly with the murder of Sherwood. However, they were tried separately. Pickering was tried first. His trial was held at Mitchell, South Dakota, on a change of venue. He was found guilty of murder and sentenced to imprisonment for life. This judgment was recently affirmed. State v. Pickering, 88 S.D. 230, 217 N.W.2d 877. The opinion was filed four days before oral arguments were presented in this cause.

One of the grounds relied on in Pickering for reversal was the admission of the same hearsay statements urged in the first ground listed above. This evidence was given by prosecution

witnesses Hempel and Wescott, two inmates, who were with Sherwood just before he died. The statements were held to have been properly admitted.

Concerning the admissibility of such evidence SDCL 23-44-4 provides:

> "Dying declarations are statements of material facts concerning the cause and circumstances constituting the res gestae of any of the following felonies to wit: homicide, rape, as rape is defined in subdivisions (3) and (4) of § 22-22-1, and abortion, as abortion is defined in § 22-17-1, made by the victim voluntarily while sane and under the fixed and solemn belief that his death is inevitable and near at hand.

> "In all prosecutions for the following felonies to wit: homicide, rape, as rape is defined in subdivisions (3) and (4) of § 22-22-1, and abortion, as abortion is defined in ·§ 22-17-1, the dying declarations of the deceased, as defined in this section, are always admissible in evidence, provided the deceased would be a competent witness if living.

> "All such declarations are also admissible in behalf of the defense."

Except as to the cases in which such statements are admissible it is basically a codification of the rule at common law.

■■■ As indicated in Pickering it is for the court to determine the admissibility of dying declarations. 40 C.J.S. Homicide § 295(d); 40 Am.Jur.2d, Homicide, § 374; Wharton's Criminal Evidence, 13th Ed., § 345. Because of infirmities inherent in such statements as evidence their admissibility should be clearly established. This seems to be our rule. State v. Mathis, 47 S.D. 577, 201 N.W. 153. See also 40 C.J.S. Homicide § 295(a); 40 Am.Jur.2d, Homicide, § 376. Proving this is the burden of the prosecution.

■■ Many of the facts germane to the utterance of the statements here questioned are the same as those on which they

were predicated in the Pickering case. Consequently we will not repeat them. To those interested they are available in the opinion in that case. However, other facts pertinent to this issue will appear in our discussion of the issue of insufficiency of the evidence. As held in Pickering the trial court in ruling on the admissibility of a dying declaration exercises a discretion and we may disturb that determination only when there has been a clear abuse of discretion.

█ Under our statute the statements must be voluntarily made and concern matter constituting the res gestae of the crime. In homicide prosecutions this restricts them to the facts leading up to or causing or attending the injurious act which resulted in the declarant's death. Wigmore on Evidence, 3rd Ed., § 1434; 40 Am.Jur.2d, Homicide, § 371; 40 C.J.S. Homicide § 298. The declarant at the time of making them must be sane and a competent witness if living. In addition to these the fundamental requirement is that he be under the fixed and solemn belief that his death is inevitable and near at hand.

█ From a careful study of the record we are satisfied all of these requirements were clearly established. That some of them were in response to inquiries does not render them involuntary. State v. Mathis, supra. As held in Pickering it is not necessary to show a statement by the victim that he was conscious of impending death. Such expectation may be inferred from the circumstances of his condition. The admission of these statements by the court was not an abuse of its discretion.

█ The thrust of his second ground is that the evidence is insufficient to establish that he knowingly aided Pickering in administering poison to Sherwood. SDCL 23-10-3 provides that all persons concerned in the commission of a felony must be prosecuted, tried and punished as principals, whether they directly commit the act constituting the offense or aid and abet in its commission.

While there are many statements concerning the meaning of the terms aid and abet, 22 C.J.S. Criminal Law § 88(2); 21 Am.Jur.2d, Criminal Law, § 119; Wharton's Criminal Law and Procedure (Anderson) § 114, we like the definition the trial court gave the jury in its Instruction No. 21. It there said:

> "A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice the commission of such crime."

This seems to encompass all that we said the terms meant in State v. Johnson, 81 S.D. 600, 139 N.W.2d 232, and State v. McCreary, 82 S.D. 111, 142 N.W.2d 240, but does it more succinctly.

Concerning defendant's participation in the offense involved it appears that he and Pickering were close friends and that there was animosity between Pickering and Sherwood. About 8 o'clock on the evening of his death Sherwood was sitting on a trash box watching the Monday night football game on TV with several other inmates including Hempel and Westcott, when he was approached by Pickering and Nelson. Pickering patted Sherwood on the head and asked if he could see him in the barber shop restroom which was on the same floor. After this Pickering and Nelson went toward the restroom, followed seconds later by Sherwood. While the three of them were there it appeared to one inmate that Pickering was trying to talk to Sherwood and he kept shaking his head as if to say "No". Then Pickering gave some blue pills to Nelson who indicated to Sherwood that they were "okay" after which Sherwood took the rest of the pills from Pickering. He swallowed them with a liquid.

Sherwood soon returned to the trash box where he had been sitting. Pickering and Nelson were not with him. He began complaining about not feeling well and started to turn blue in the face. An inmate near him notified a guard but he did not respond until called again. Sherwood then inquired of inmate Hempel "What kind were them blue pills that come in a capsule?" and said he just took some. He also said "You don't think Nelson and Pickering would give me any bum pills, do you?" He complained of having trouble breathing and seeing. He didn't believe he could walk and tried to stand but was unable to. On a visit to the penitentiary at about noon that day, Mrs. Pickering had delivered some strychnine to her husband in an amber brown colored bottle.

While still on the trash box inmate Wescott asked him if he had taken any pills—and reminded him that he had previously told him that he was going to get ahold of some bad ones to which Sherwood responded "You don't think Pat and him would do anything like that to me?", at which time he admitted that he had taken some pills from Pat. Both Pickering and Sherwood were users of pills which the inmates referred to as downers. Soon after that he started to have seizures or convulsions and turned from red to blue to black and had difficulty breathing. When the guard came to his assistance he kept crying for help until his voice faded and he began to gasp. The guard promptly summoned a stretcher. His condition deteriorated from normal to seriously ill in 10 minutes. He appeared to be rigid as he was carried out on the stretcher.

During the first week in October 1971 Nelson worked in the carpenter shop and was employed there until the 14th or 15th of that month when he was put in isolation. After breakfast on October 5th Pickering was seen handing a brown bottle with white substance in it to Nelson and told him to take it to the shop and stash it. Nelson took the bottle. On June 29, 1972 a small bag of white substance was discovered under a sanding machine in the carpenter shop.

The mere presence of a person at the scene of a crime does not make him a participant, but it is a circumstance which tends to support a finding that he is, and with other facts and circumstances may establish his guilt of the offense. State v. Peck, 82 S.D. 561, 150 N.W.2d 725; State v. Weinandt, 84 S.D. 322, 171 N.W.2d 73. While most of the testimony concerning Nelson's participation in the offense was necessarily from inmates, its believability was for the jury. The facts and circumstances shown are sufficient, if believed, to permit the jury to find beyond a reasonable doubt that defendant either participated in, or aided and abetted Pickering in the homicide involved.

His remaining complaint concerns receiving in evidence the testimony of William G. Baker given on direct examination when he testified for the state at the preliminary hearing held for Nelson in this matter in December 1971. He was an inmate in the penitentiary at the time of Sherwood's death and also at the time

of Nelson's preliminary hearing. Thereafter he was released from the penitentiary and left the state but willingly returned at the request of the state and testified for it at the trial of Pickering in July of 1972. He was then advised by the state's attorney that he would be wanted as a witness at Nelson's trial and was requested to inform the prosecution of any changes in his address or circumstances. This he agreed to do but never did.

About three weeks before the commencement of this trial which began on February 26, 1973, the state initiated efforts to locate Baker at his former places of residence. It learned that he could not be located in these places and further that on November 14, 1972 a warrant for his arrest for passing a forged and counterfeit check had been issued in Gibson County, Tennessee. The authorities there sent warrants for his arrest to two places where they had reason to believe he might be, but to no avail. They also entered his name in the National Crime Information Center computer in Washington, D. C. In addition a Federal warrant for his arrest as a fugitive was issued through the F.B.I. None of these authorities were able to locate him. Nor did his in-laws at Mitchell, South Dakota have any knowledge as to his or his wife's recent whereabouts.

In State v. Heffernan, 22 S.D. 513, 118 N.W. 1027, this court held it was error to read from the stenographer's transcript the testimony on preliminary examination of witnesses for the state who were then absent from the state. On rehearing this holding was reversed. State v. Heffernan, 24 S.D. 1, 123 N.W. 87, 25 L.R.A., N.S., 868, 140 Am.St.Rep. 764. In State v. Carr, 67 S.D. 481, 294 N.W. 174, the court adhered generally to the rule announced on rehearing in Heffernan but recast it to read thus:

" 'The testimony given by a witness on the preliminary examination or on a former trial is not admissible as substantive evidence, unless it is satisfactorily shown by the side offering the evidence that such an examination or trial was had in a judicial tribunal; that the witness was sworn and testified; that accused was present and had an opportunity for cross-examination; that the parties and the issues were substantially the same as in the

case on trial; and that the witness has since died, or has become insane or has left the state permanently or for an indefinite time, or is unable to attend and testify on account of sickness or physical disability, or after due diligence cannot be found.' "

On the first day of this six-day trial the state advised the court and the defendant of its inability to locate Baker and of its plan to introduce his testimony given at the preliminary hearing. The court delayed ruling until it was offered as the last item of evidence in the state's case.

■ The preliminary hearing at which the evidence in question was given was held in the Municipal Court of Sioux Falls, before a judge pro tempore of that court. Baker was sworn before testifying and Nelson was present with his counsel who cross-examined the witness. The complaint on which the hearing was held charged defendant and Pickering with the murder here involved. This evidence was properly received under the rule of State v. Carr, supra. We are unwilling to depart from that rule, even to the extent requested by defendant.

Moreover, before this testimony was read to the jury the defendant, at an in camera hearing, was permitted to interpose objections to any of it. He objected to many of the questions, all of which were sustained except one. Defendant's request that his cross-examination of the witness at the preliminary hearing be not read to the jury was granted, as was his further request that the jury be advised that Baker was a fugitive from justice. This was done by the trial judge. Also his counsel was permitted to read to the jury, from the F.B.I. records, the list of the absent witness' convictions of felonies. In the interest of fairness the court went further than the extra mile.

Affirmed.

All the Justices concur.

RENTTO, Retired Judge, sitting for DOYLE, J., disqualified.