237 N.W.2d 166 (1975)
In the Matter of the Neglect and Dependency of D. T.
No. 11459.
Supreme Court of South Dakota.
Argued September 10, 1975.
Decided December 12, 1975.
*167 Fred F. Hendrickson, Marvin D. Truhe, Rapid City, for appellant, Mother of D. T.
William J. Janklow, Atty. Gen., Peter H. Lieberman, Asst. Atty. Gen., Pierre, for respondent, State of South Dakota.
DUNN, Chief Justice.
On September 22, 1970, an amended petition[*] was filed alleging D. T. to be a dependent and neglected child because of conduct of the parents during a period from September 1969 to January 1970. After trial, the district county court on January 20, 1971, entered a decree terminating the parental rights of the appellant and the father in the child and placed D. T. with the Department of Public Welfare for the purpose of adoption. An appeal was taken by appellant (mother) from this decision for a trial de novo in circuit court. The father, M. T., did not appeal from this judgment. An adjudicatory trial de novo was held on May 18, and 19, 1972, in circuit court following which the court entered an adjudicatory order declaring that D. T. was a dependent *168 or neglected child. On August 7, 1972, a dispositional hearing was held, and on January 28, 1974, the court entered findings and judgment terminating the parental rights of the appellant. From this adjudicatory order and judgment appellant has appealed to this court on the grounds that (1) the phrase, "neglected or dependent child," as defined in SDCL 26-8-6, is unconstitutionally vague and indefinite; (2) the trial court erred in allowing relevant evidence of alleged abuse which occurred subsequent to the filing of the petition in this proceeding; (3) the trial court erred in admitting recorded testimony of state witnesses taken at the trial in district county court without a proper showing for such testimony under SDCL 15-6-26(d); and (4) the trial court's finding that the child was dependent and neglected was not supported by the evidence. We affirm both the adjudicatory order and judgment.
The evidence adduced from state witnesses actually present and testifying at the trial de novo in circuit court was to the effect that (1) the child slept on a mattress on the floor with a couple of blankets but no sheets, and the mattress was not clean; (2) two puppies, which were not housebroken, slept in the room with her, and they left messes on the floor which were not cleaned up promptly leaving a strong and unpleasant odor in the room; (3) appellant punished D. T. by striking her repeatedly with a belt and at times by striking her across the face causing a cut lip and a black eye; (4) the child was dirty and smelly from failure to bathe, change diapers and clothing; (5) on various occasions appellant would take the child with her to her job as a dogcatcher by day and leave her in a dirty compartment of the truck while appellant performed her work. Appellant would also take D. T. to her nighttime job as a barmaid, and the child was observed sleeping in a booth of the bar and also on one occasion in a parked car dressed only in pajamas and a jacket on a chilly night; (6) the child was hungry and showed bruises on her shoulders and an ulcerated diaper rash when delivered to the baby-sitter; and (7) on September 5, 1970, the Rapid City police were called to the residence of appellant and found that D. T. had been bruised quite badly on her back and bottom legs. Photographs of the child's body were taken and later admitted in evidence. The appellant admitted that she had disciplined the child by beating her repeatedly with a belt. It was on this occasion that the child was turned over to welfare pending a hearing and adjudication of the matter. This testimony was corroborated by recorded testimony of other witnesses taken at the trial in district county court which will be dealt with later in this opinion.
Appellant testified that she took the child in contravention of a court order for a period of two months beginning in May 1971, and that the child was very happy with her and that she loved her. She admitted to being an irresponsible parent in the past, but with her present stable marriage contended that she could maintain a secure future for the child. Documentary evidence was introduced to show that appellant took D. T. for regular medical treatment. Various witnesses testified that appellant was a good and loving mother, a good housekeeper and that she had matured after her divorce and remarriage to Daniel Boyd. Further, a comprehensive home study of appellant was made in her new home by the St. Louis, Missouri, Welfare Department. It found that appellant's home was clean and adequate, that appellant and her new husband were desirous of accepting the responsibility of raising D. T., and recommended that the child be returned to the natural mother under the Welfare Department's supervision.
On the basis of these facts, the trial court found that: (1) the appellant had subjected D. T. to mistreatment and abuse by battering her, (2) it was probable that D. T. would be battered in the future if she were returned to the appellant, and concluded that: (1) D. T. is a dependent and neglected child within the meaning of SDCL 26-8-6, and (2) the best interests of D. T. and the State *169 of South Dakota would be served by terminating the parental rights of appellant, and by granting the South Dakota Department of Social Services, Division of Social Welfare, adoptive rights in the child.
The first assignment of error deals with the unconstitutionality of SDCL 26-8-6 as being vague and indefinite. The statute reads:
"Neglected or dependent child defined.  In this chapter unless the context otherwise plainly requires `neglected or dependent child' means a child: whose parent, guardian, or custodian has abandoned him or has subjected him to mistreatment or abuse; who lacks proper parental care through the actions or omissions of the parent, guardian, or custodian; whose environment is injurious to his welfare; whose parent, guardian, or custodian fails or refuses to provide proper or necessary subsistence, education, medical care or any other care necessary for his health, guidance, or well-being; or who is homeless, without proper care, or not domiciled with his parent, guardian, or custodian through no fault of his parent, guardian or custodian. Provided however, notwithstanding any other provision of this chapter, no child who in good faith is under treatment solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall, for that reason alone, be considered to have been neglected within the purview of this chapter." (emphasis supplied)
Enactments of the legislature should be upheld unless they are clearly and unmistakably unconstitutional. City of Rapid City v. Rensch, 1958, 77 S.D. 242, 90 N.W.2d 380; Smith v. Peterson, 131 Cal.App.2d 241, 280 P.2d 522, 49 A.L.R.2d 1194.
The real question comes down to whether the terms, "subjected him to mistreatment or abuse," "lacks proper parental care," or "whose environment is injurious to his welfare," deal with practices "`so vague that men of common intelligence must guess as to [their] meaning.'" State v. Dove, 1955, 75 S.D. 460, 67 N.W.2d 917. Certainly it is not necessary to cover all possible parental mistreatment in the statute. As stated in In Re Neglected Child, 130 Vt. 525, 296 A.2d 250:
"In the instance of neglect the many diverse circumstances which give rise to a finding of neglect must be considered when the standards embodied in [the statute] are viewed in light of the due process clause. Once this is done, it becomes apparent the standards embodied within [the statute] are detailed enough to govern the achievement of the purposes the act seeks to fulfill * * *." 296 A.2d at 254.
It is concluded that the language of SDCL 26-8-6 does convey sufficiently definite warning as to proscribed conduct when measured by common understanding and practice. Due process requires no more. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877. Reasonable people, including this appellant, could not be in doubt that beating a small child repeatedly with a belt and striking her across the face is "mistreatment or abuse," and that a child whose diapers and clothing are not changed and who is hungry "lacks proper parental care," and that a child who sleeps on a floor on a dirty mattress without sheets amid the excrement of animals, or who sleeps in a bar or in an automobile in pajamas on a cold night was one "whose environment is injurious to his welfare." We would hold that SDCL 26-8-6 provides standards which the average intelligent person can understand and from which he can regulate his conduct. Thus there is no violation of the constitutional right of due process.
Appellant next complains that the trial court improperly received evidence of events occurring after the dates specified in the petition to sever parental rights. Objection is made in particular to events of *170 September 5, 1970, when the police took the child and to the photographs placed in evidence of bruises on the child at that particular time. This argument is predicated on a denial of due process in that appellant was not given notice that her conduct after January 1970 was in question and thus she could not adequately prepare her defense.
It first should be noted that appellant did not request a continuance at either hearing in order to defend against these photographs. Further, while there may have been some surprise at the first hearing in 1970 in district county court, there could not have been any surprise at the trial de novo in May of 1972.
We would hold that the evidence presented by the pictures was relevant to the question of appellant's continuing treatment of D. T. The pictures created a reasonable inference that present behavior is similar to past action, and that the court did not abuse its discretion in admitting the photographs in evidence. As pointed out in In Interest of Nelson, 1975, 216 Kan. 271, 531 P.2d 48, where this issue was raised:
"The trial in district court was a de novo hearing on the factual issues of the dependency and neglect of the children and appellant's fitness to have their custody and the ultimate issue of the best interests and welfare of the children. The questioned evidence was relevant to those issues and it was not rendered inadmissible because it related to events occurring after the filing of the petition initiating the proceedings." 531 P.2d at 51.
The third issue raised was whether the trial court erred in admitting prior recorded testimony from the district county court trial into evidence at the trial de novo in circuit court. The state offered the deposition of M. T., Jr., appellant's former husband and the father of D. T. This deposition had been taken prior to the district county court trial and had been admitted into evidence at that proceeding. The state also offered into evidence the transcribed testimony of three witnesses who had testified before the district county court. The state alleged that one of the witnesses was dead and that the other two had been subpoenaed and could not be found within the jurisdiction of the court. No testimony was offered and the court relied on the unsworn statements of the state's attorney as an officer of the court. Appellant objected on the grounds that the state had not made a proper showing that the witnesses were unavailable to testify at the trial de novo.
First, as to the deposition of M. T. Jr., we hold that the transcribed testimony was properly admitted at the trial de novo. When the deposition was taken it was done with the understanding that Mr. T. would not be present at the district county court trial as he was then residing in Pennsylvania and was only visiting in Rapid City. In the deposition Mr. T. gave his address as Baden, Pennsylvania. Therefore the deposition was properly admitted at the first trial because at that time Mr. T. was out of the county and could not be subpoenaed by either party. See SDCL 15-6-26(d)(3). Since there was a showing that Mr. T. was out of the county and unavailable at the first trial a presumption arises that he was unavailable to testify at the trial de novo. See Kaufman v. Caughman, 1897, 49 S.C. 159, 27 S.E. 16. This presumption is rebuttable, but here the appellant made no showing that Mr. T. was available to testify. Therefore his deposition was properly received by the circuit court at the trial de novo.
The testimony of the other three witnesses presents a different question, however. The rule there was first stated in State v. Carr, 67 S.D. 481, 294 N.W. 174, and was quoted verbatim by this court in State v. Nelson, 1974, S.D., 220 N.W.2d 2:
"`"The testimony given by a witness * * * on a former trial is not admissible as substantive evidence, unless it is satisfactorily shown by the side offering the evidence that such an examination or trial was had in a judicial tribunal; that the witness was sworn and testified; that *171 accused was present and had an opportunity for cross-examination; that the parties and the issues were substantially the same as in the case on trial; and that the witness has since died, or has become insane or has left the state permanently or for an indefinite time, or is unable to attend and testify on account of sickness or physical disability, or after due diligence cannot be found."'" 220 N.W.2d at 7.
The parties seem to agree that prior recorded testimony is an exception to the hearsay rule and admissible when taken on the same subject matter and when cross-examination was afforded. The only question is whether the state's attorney made an adequate showing that the witnesses were unavailable to testify.
The showing made by the state's attorney was certainly minimal. On the record we have only his bare assertion that one of the witnesses was dead and the other two were no longer living in the Rapid City area. Apparently subpoenas were issued, but they were not put into evidence showing the return by the sheriff. Where an objection was made, the trial court should have required a showing at least that the subpoenas could not be served within the jurisdiction. We hold that the state's attorney did not lay a sufficient foundation to prove the unavailability of the three witnesses and the court erred in admitting their previous testimony into evidence.
We do not reverse, however, because we are convinced that the error was not prejudicial to the appellant. In examining the prior testimony of these three absent witnesses, it is clear that their testimony was only cumulative of evidence adduced from the other witnesses who were present and testified at the trial de novo. As we said in Alberts v. Mutual Service Casualty Insurance Co., 1963, 80 S.D. 303, 123 N.W.2d 96: "Evidence received though inadmissible which tends to be cumulative is generally deemed to be nonprejudicial." Accordingly, we hold that the error here was harmless and did not prejudice appellant's case.
As to the final argument that the evidence was not sufficient to support the court's finding that D.T. was dependent and neglected, we cannot find that the trial court was clearly erroneous. Even with the deletion of the testimony held inadmissible above, there was evidence, and substantial evidence produced by the state, to sustain the finding that D.T. was a dependent and neglected child during the period examined under the petition.
The adjudicatory order and the dispositional judgment are therefore affirmed.
All the Justices concur.
NOTES
[*] For some reason the original petition is not contained in the settled record. There are, however, two amended petitionsone dated September 22, 1970, and the other dated October 23, 1970. Since the allegations contained in each amended petition are for the most part the same, we will consider the latter amended petition to be supplemental to the former amended petition.