**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Dennis L. RUNGE, Lonnie Whiting, Royce Whiting, Vaughn Whiting, Becky Kapsch, and Becky Bollack, Defendants and Appellants.**

Nos. 11833, 11850, 11865, 11869, 11870 and 11876.

Supreme Court of South Dakota.

March 20, 1978.

Rehearing Denied April 19, 1978.

Clyde Saukerson, Davison County State's Atty., Mitchell, Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Lloyd J. Mahan, Parkston, for defendant and appellant Dennis L. Runge.

Carl F. Haberstick of Jacobson & Haberstick, Parkston, for defendant and appellant Vaughn Whiting.

Randolph F. Stiles, Mitchell, for defendant and appellant Becky Kapsch.

LeRoy S. Lassegard, Mitchell, for defendant and appellant Lonnie Whiting.

John F. Cogley of Morgan, Fuller, Theeler & Cogley, Mitchell, for defendant and appellant Becky Bollack.

Patrick J. Kirby, Mitchell, for defendant and appellant Royce Whiting.

CHEEVER, Circuit Judge.

Shortly before dawn on June 1, 1975, Mrs. Ed Liddeke of Mitchell, South Dakota, was awakened by what she described as a metal-like noise outside her bedroom window. She thought someone was tampering with their automobile which was parked just outside the bedroom. She woke her husband; the noise was repeated. She then got out of bed to go to the phone to report the matter to the police. The telephone had a long cord on it and after dialing the call, she returned to the bedroom door, looking out of the window of her bedroom while she talked to the dispatcher. At that time, she noticed an individual standing by the east side of the South Side Liquor Store which she testified was approximately 40 feet from her bedroom window. After completing the call, she continued to watch this person and testified that at one time when a couple of trucks were going by on the street in front of the liquor store, he "scooted down." He then went back of the store, then turned around, back to the east side, and walked down a road to the south. Because of the light conditions, she was unable to see this individual clearly but described him as being about the same size as her own son who was 240 pounds and six feet tall. She was unable to describe the clothing that he was wearing.

Within a couple of minutes, Officer Doug Feltman of the Mitchell Police Department arrived at the scene in his patrol car. His testimony was that it was then 4:56 a. m. He drove by the north side of the store and then around the east side where there was a drive-in window. Here he observed that a small pane of glass had been broken out of the window just beside the shuttered drive-in window. He also observed three cans of Budweiser beer on the ground just below the drive-in window. No one was in the area, and after communicating with the dispatcher, he started cruising the area in the vicinity of the liquor store, traveling in an easterly direction. At a point about two blocks from the liquor store, he met a vehicle. He turned around and followed this vehicle for approximately a block and a half. At this point, the vehicle pulled over to the side of the street and stopped. The officer testified he had not turned on his red lights or siren and that the vehicle stopped of its own accord. He pulled up behind the vehicle, got out and walked up to the vehicle. He had a flashlight in his hand and shone the light into the vehicle. He recognized by name the four males but did not know the names of either of the two females who were in the vehicle, although he indicated he had previously seen them. Dennis Runge was driving the vehicle,

Becky Kapsch was sitting next to him and Royce Whiting was sitting on the passenger side of the front seat. Vaughn Whiting was on the left side of the rear seat. Becky Bollack was sitting in the middle and Lonnie Whiting was sitting on the right side. When he shone his flashlight into the back seat, he noticed on the floor a large number of cans of Budweiser beer partially covered with two jackets and some cardboard boxes. He also noticed that Lonnie Whiting did not have a shirt on, that he was breathing heavily, and that his right hand was bleeding. About this time, a second patrol car driven by Officer Parrish arrived at the scene. Officer Feltman walked over to Parrish's vehicle, used his radio to communicate with another patrol car driven by Officer Giedd which was at the South Side Liquor Store. He made inquiry as to whether or not there was any evidence of blood on the window at the store and was advised by Officer Giedd that there appeared to be. He then returned to the stopped vehicle, told the occupants to get out, that they were under arrest for burglary. They refused to get out of the vehicle. He then returned to his vehicle to use the radio and as he did so, all the occupants of the car got out and stood in the street, locking the doors as they did so. Officer Feltman radioed for Giedd to come to their assistance, and he and Officer Parrish then proceeded to put the people from this vehicle into their patrol cars. As they were in the process, he noticed that one of the girls, later identified as Becky Bollack, had walked away from the scene of the stop. When Officer Giedd arrived, they placed one prisoner in his car, gave him a description of the girl who had walked away, and he started to search for her, subsequently locating a girl matching her description a couple of blocks from the scene of the stop. Officer Feltman then went to this area, talked to the girl, identified her as being an occupant of the vehicle and took her name, but he did not place her in custody. The other five defendants were taken to the police station and placed in detention. The automobile was hauled to the police station where the doors were opened and the beer and jackets and cardboard boxes removed.

Later that morning at about 10 a. m., Officer Feltman returned to the area of the South Side Liquor Store, made further examination there, and then drove the general area. At one point, approximately a half block east of the store, he noticed three full cans of Budweiser beer lying on the ground. He then contacted a detective in the Police Department. Together they conducted a further search of the area and located on a machinery parking lot, as they described it, two other areas where there were three cans of Budweiser beer lying on the ground. Near each of these beer cans, they noticed some distinctive footprints. They took photographs of these prints. They later returned to the liquor store, took samples of the broken glass and of the soil and broken glass beneath the window. At a later time, at the jail, clothing was removed from Lonnie Whiting and boots from Lonnie and Vaughn Whiting. A blood sample was taken of Lonnie Whiting. The blood sample, the glass particles, boots, and clothing were subsequently sent to the FBI Laboratory for identification.

During the trial, there was testimony that all six of the defendants had been seen together at Lake Mitchell about midnight prior to the time that the burglary was discovered. Agents of the FBI testified that some of the glass particles and the glass from the window matched glass particles found in the clothing of Lonnie Whiting. They also testified that the blood samples taken from the glass were of the same blood type as the blood of Lonnie Whiting. They further testified that the bootprints observed and photographed on the vacant lot were of the same size and design and approximately the same amount of wear as the boots taken from Lonnie and Vaughn Whiting. The clerk who had locked up the liquor store about midnight on Saturday preceding the burglary testified that there were a number of cases of Budweiser stacked on the floor immediately beneath and behind the drive-in window just in back of the glass portion which had been broken out during the burglary. Photographs tak-

en of the interior of the liquor store the morning after the burglary showed that there were still a number of cases of Budweiser stacked on the floor but that the stack was in disarray and a number of cans had been knocked to the floor along with two cardboard bottoms of beer cases. No one was able to give any testimony as to the exact amount of beer missing from the liquor store.

None of the defendants testified at the trial. All the evidence produced by the State was of a circumstantial nature. All six of the defendants were tried together and the jury returned a verdict of guilty of third degree burglary as to each of the defendants. All defendants have appealed their convictions on various assignments of error.

Each of the defendants assigns as error that the evidence is insufficient to sustain a conviction. The defendant Becky Kapsch urges as error the fact that the court had denied her application for severance of her trial. Error was assigned also alleging that the original arrest by the officer was illegal because he did not have a basis on which to make the arrest. There were other assignments of error but we do not find any merit in them.

■ Dealing first with the assignment of error that the officer did not have sufficient cause to make an arrest, let us look at the facts at that stage of the case. The officer had received a radio dispatch that the South Side Liquor Store had been broken into. He arrived on the scene very shortly thereafter. He observed a broken window, he observed three cans of Budweiser beer lying on the ground just beneath the window, there was no one in the area, he started to drive, and within a matter of three or four minutes and at a point approximately two blocks from where the break-in occurred, he observed a car. He followed the vehicle. The vehicle stopped of its own accord. He walked up to the vehicle with his flashlight, observed the defendant Lonnie Whiting sitting in the back seat of the car without a shirt, breathing heavily, and with blood on his arm. He

observed a large number of cans of Budweiser beer on the floor of the back seat, partially covered by two jackets and some boxes. He radioed back to the scene and was informed by the officer that there was blood present at the scene. This was approximately 5 a. m.

Examining his conduct in the light of the rule laid down by the Supreme Court of the United States in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, it appears that his acts and conduct were not only reasonable but logical. He had made the observations at the scene of the break-in. He had made the observations at the scene of the stop; he had been supplied with a radio communication. Certainly, this should have been adequate information for him to make a valid arrest of the occupants of that vehicle on a charge of burglary.

■ We deal next with the contention of Becky Kapsch that the court abused its discretion in not granting her a severance for trial purposes. An examination of the file reflects that Becky Kapsch, by and through her attorney, filed a motion, which was not supported by any affidavits, in which she set forth several grounds as a basis for her belief that she would be entitled to a separate trial. One of them being that there might be certain testimony which would be admissible against the other defendants but which would not be admissible against her. She did not particularize this or any other showing.

SDCL 23–42–4 provides that the court, in its discretion, on an application duly made prior to trial may direct that separate trials be had.

In *State v. Strickland,* 87 S.D. 522, 528, 211 N.W.2d 575, 579, the court said:

> "In the absence of a more particularized showing as to any possible prejudice, we conclude that the trial court did not abuse its discretion in denying the motion for separate trials."

In this case, the application of Becky Kapsch did not make any particularized showing as to any possible prejudice. The

record does not reflect any testimony was introduced which would not be applicable to all of the defendants. We cannot see that the record reflects that there was any prejudice insofar as this defendant was concerned. Inasmuch as this was within the sound discretion of the court, there has been no showing by the defendant in her brief which would lead us to conclude that the court did abuse its discretion.

■ Going next to the main contention, that is, that the evidence was insufficient to warrant a conviction, we have a more difficult area. All the evidence in this case is circumstantial. Looking specifically at the defendant Lonnie Whiting, it appears that there is more than sufficient evidence to tie him in to the commission of the crime. He was found several minutes after the crime was committed in the close proximity of the crime scene in a vehicle occupied by all of the defendants. He was shirtless and bleeding. His blood type was linked to that found at the scene of the crime. Particles of glass which were removed from his jeans matched glass from the liquor store window. Footprints of his boots were found approximately a block from the scene of the crime.

Looking at the other defendants, all six of them had been observed together at approximately midnight prior to the burglary. They were also together at 5 a. m. on the morning of June 1, when the officer examined the vehicle in which they were riding. The boots of Vaughn Whiting matched the prints on the vacant lot. The window that was broken in at the liquor store was a very narrow window. The officer testified that the actual break in the glass measured approximately one foot by four inches. This would lead to the belief that the beer had been removed can by can from the liquor store. The further fact that the officer discovered immediately underneath the window three loose cans of beer, and later the next morning, three more cans approximately a half-block east of the liquor store, and two groups of three other cans in a vacant lot approximately a block from the liquor store would lead to a conclusion that the beer had been transported by individual cans from the liquor store to the car parked some block away. The physical act of removing approximately 70 loose cans of beer, transporting them from the liquor store to the car would lead one to believe that it was not the work of one individual but, rather, that of a group. The car involved was being driven by Dennis Runge. It was owned by Becky Bollack.

■ Instruction No. 13 in this case reads in part as follows:

"A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, or by act and advice, the commission of such crime, and one who thus aids and abets the commission of a crime such as charged though not present and not directly committing the act constituting the offense is an accessory before the fact and chargeable as a principal.

\*       \*       \*       \*       \*       \*

"The mere presence of a person at the commission of the crime does not make him guilty of the crime unless he participates in the crime or aids, abets, or assists another in the commission of the crime."

The first portion of this instruction bore the stamp of approval of this court in *State v. Nelson*, S.D., 220 N.W.2d 2. The second portion of this instruction complies with the ruling of the court in *State v. Peck*, 82 S.D. 561, 150 N.W.2d 725; *State v. McCreary*, 82 S.D. 111, 142 N.W.2d 240; *State v. Henry*, 87 S.D. 454, 210 N.W.2d 169; and *State v. Bonrud*, S.D., 246 N.W.2d 790.

In connection with the instruction given in the *Nelson* case, this court made the following statement:

"While most of the testimony concerning Nelson's participation in the offense was necessarily from inmates, its believability was for the jury. The facts and circumstances shown are sufficient, if believed, to permit the jury to find beyond a reasonable doubt that defendant either participated in, or aided and abetted Pickering in the homicide involved." 220 N.W.2d at 6.

In *Bonrud*, dealing with the same question, this court stated:

> "Presence of the defendant, however, at the scene of a crime, coupled with evidence of companionship and conduct before and after the crime is committed, may raise an inference of guilt. *State v. Weinandt*, 1969, 84 S.D. 322, 171 N.W.2d 73. Presence is a circumstance that tends to support a finding that defendant is a participant and when considered with other facts and circumstances, may establish guilt. *State v. Nelson*, 1974, S.D., 220 N.W.2d 2." 246 N.W.2d at 793.

In this case, the instruction given was a proper one, and we must assume that the jury abided by the same. The facts and circumstances set forth within the evidence are sufficient if believed to permit a jury to find beyond a reasonable doubt that the defendants either participated in or aided and abetted in the commission of this offense.

In Instruction No. 12, the court gave the approved instruction pertaining to circumstantial evidence and cautioned the jury in such instruction as follows:

> "To warrant a conviction of crime on circumstantial evidence alone the circumstances taken together should be of a conclusive nature, and tending on the whole to a satisfactory conclusion, and pointing to a moral certainty that the accused committed the offense charged * * *."

We believe that there was sufficient evidence before the jury if believed by them to permit them to find beyond a reasonable doubt that the defendants were guilty. We cannot say, as a matter of law, that there is insufficient evidence to convict the defendants in this case after the jury had found them guilty under the proper instructions given.

The judgments of conviction and the orders denying new trials for Becky Bollack and Becky Kapsch are therefore affirmed.

DUNN, C. J., and WOLLMAN, J., concur.

ZASTROW and PORTER, JJ., concur in part and dissent in part.

CHEEVER, Circuit Judge, sitting for MORGAN, J., disqualified.

ZASTROW, Justice (concurring in part and dissenting in part).

I would concur in the affirmance of the convictions of Lonnie Whiting and Vaughn Whiting because the evidence, though circumstantial, viewed in the light most favorable to the jury verdict supports the convictions.

However, the convictions of Royce Whiting, Dennis Runge, Becky Kapsch and Becky Bollack are not based upon the same circumstantial evidence and should be reversed. Each of the convictions is based upon circumstantial evidence that these four codefendants aided and abetted in the commission of the burglary of the South Side Liquor Store.

The rule is well established in South Dakota that to warrant a conviction upon circumstantial evidence alone, the facts and circumstances must be shown which are consistent with each other and with the guilt of the defendant, and of such character as to be inconsistent with any reasonable hypothesis of innocence. *State v. Shank*, S.D., 226 N.W.2d 384; *State v. Catlette*, S.D., 221 N.W.2d 25; *State v. Henry*, 87 S.D. 454, 210 N.W.2d 169; *State v. Scott*, 84 S.D. 511, 173 N.W.2d 287; *State v. McCreary*, 82 S.D. 111, 142 N.W.2d 240.

Furthermore, a conviction as a principal for aiding and abetting must be proven by evidence which establishes that the defendant knowingly and with criminal intent aids, promotes, encourages, or instigates by act or advice the commission of the crime. *State v. Nelson*, S.D., 220 N.W.2d 2; *United States v. Thomas*, 8 Cir., 469 F.2d 145. Mere association between the principal and the party accused of aiding and abetting is not sufficient, nor is mere presence at the scene and knowledge that the crime was to be committed sufficient to establish aiding and abetting. *Snyder v. United States*, 8 Cir., 448 F.2d 716. It is true that presence and companionship may support a finding

of guilt, but only if it is supported by other facts and circumstances. *State v. Bonrud,* S.D., 246 N.W.2d 790; *State v. Anderberg,* S.D., 228 N.W.2d 631; *State v. Nelson,* supra; *State v. Henry,* supra; *State v. McCreary,* supra; *State v. Peck,* 82 S.D. 561, 150 N.W.2d 725.

In each of the cases where the presence of the defendant was used as support for a conviction, the facts and circumstances strongly suggest an active participation in the criminal conduct. However, in *State v. McCreary,* supra, this court reversed the conviction of one of the codefendants who was seated in the getaway vehicle during the burglary. The evidence against the four codefendants here is certainly no stronger than the evidence in *McCreary.*

The majority opinion recognizes the closeness of the sufficiency of the evidence against these four codefendants. However, it rests the affirmance upon the "inference" that carrying seventy loose cans of Budweiser a distance of one and one-half blocks required a group effort. The facts simply do not support such an inference.

The police found two sets of distinctive boot impressions along the path where loose Budweiser cans were found. The size of the impressions (13½″ and 14½″ long) matched those which would be made by the boots worn by Lonnie and Vaughn Whiting. No impressions were discovered or identified as belonging to any of the other defendants. Although carrying seventy loose beer cans might appear to be a problem for two people, the evidence appears to indicate that it would not be so for Lonnie and Vaughn Whiting. Each stood 6′8″ and weighed three hundred pounds or more; each had a denim jacket; however, Lonnie was not wearing his at the time of arrest, it being wrapped around the beer cans found in the car. The facts and circumstances would seem to infer that burglary was perpetrated by Lonnie and Vaughn Whiting without the assistance of the others.

The only evidence of guilt against the four codefendants would appear to be companionship with the perpetrators before the crime, and the evidence does show that Dennis Runge, Becky Kapsch, and Royce Whiting were in the company of Lonnie and Vaughn Whiting after the burglary. There is simply no evidence that Becky Bollack was at the scene of the arrest. She was seen five blocks from the scene of the arrest by the police officer who had stopped the car. The police officer did not, however, identify her as being the woman who had walked away from the scene of the arrest. The majority opinion states that Becky Bollack owned the car, but this is not supported by the settled record. A vehicle registration slip was marked and identified by the Davison County treasurer. It was not offered as an exhibit nor received as evidence; it should not at this time be considered by this court as evidence to support her conviction. The evidence of companionship and presence one and one-half blocks from the scene is insufficient to uphold the convictions on the theory of aiding and abetting.

Although it is possible that the evidence could support a conviction of the four codefendants as accessories after the fact under SDCL 22-3-5, we need not decide that issue since they were not charged as accessories. A defendant should not, however, be convicted as a principal (nor that conviction affirmed) on the theory of aiding and abetting for conduct which would make him only an accessory after the fact. *State v. Barnes,* Iowa, 204 N.W.2d 827.

The trial court also gave several instructions on "inferences" which the jury could draw from certain facts. These instructions were apparently based upon the inferences drawn by the court in *State v. Peck,* supra, in affirming the conviction in that case. However, the inferences stated therein were not intended to be given as jury instructions. They are inferences drawn by the appellate court in considering the sufficiency of the evidence to support the verdict. In doing so, the appellate court is under a duty to view the evidence in the light most favorable to the state and to accept all reasonable inferences tending to support the verdict. *State v. Best,* S.D., 232 N.W.2d 447. That an inference may be

made by the Supreme Court based upon the facts of a case does not make such an inference a rule of law which should be given as an instruction. The instructions on inferences given to the jury in this case totally negated the court's proper instructions on the circumstantial evidence, burden of proof and mere presence. As to the four codefendants, the inference instructions were prejudicial error. Because the inference instructions did not relate to Lonnie and Vaughn Whiting, the error does not appear to be prejudicial.

I join in Justice Porter's dissent as it relates to the issue of separate trials and the sufficiency of evidence against Becky Bollack and Becky Kapsch.

PORTER, Justice (concurring in part, dissenting in part).

I concur in the opinion of Judge Cheever affirming the judgments as to defendants Lonnie Whiting, Royce Whiting, Vaughn Whiting and Dennis Runge. I respectfully dissent from the majority opinion as to defendants Becky Kapsch and Becky Bollack.

### BECKY KAPSCH

#### I

She was with the other defendants at Lake Mitchell at midnight. She was a passenger in a car with the other defendants when the car was stopped by a police officer as described in the majority opinion.

Assuming that two or four of the males in the car had burglarized the liquor store and that the beer in the back seat came from the burglary, the question presented is whether Kapsch's conviction of burglary can be sustained solely upon proof of her association with the male defendants at Lake Mitchell and at the time she and the other defendants were found in the car.

There is no direct evidence that Kapsch was present at the scene of the burglary, nor that she in any way aided or abetted the four males. None of the circumstantial evidence, i. e., blood samples, glass particles, boots, footprints or clothing, pertains to her. The State made no claim that she was in unexplained possession of recently stolen property from which circumstance her guilt could be inferred, and it is clear from the instructions the case against her was not submitted to the jury on that basis. According to the arresting officer, he did not stop the car in which the defendants were riding. He had followed it and when it stopped, he approached it. Just before it stopped, the car was proceeding in the direction of the liquor store rather than fleeing the scene at a high speed.

Kapsch cannot be convicted as an aider or abetter unless there is evidence that she aided, promoted, encouraged or instigated, by act or advice, the commission of the burglary. As a matter of law her guilt of burglary may not be inferred solely from her presence in the car at some time after the burglary. *State v. McCreary*, 82 S.D. 111, 142 N.W.2d 240 (1966). At most the evidence does no more than cast a suspicion upon Becky Kapsch, and "mere suspicion or probabilities, however strong, are not sufficient basis for a conviction." *State v. Johnson*, 67 S.D. 459, 463, 293 N.W. 822, 824 (1940). As the Iowa Supreme Court said in *State v. Barnes*, 204 N.W.2d 827 (1972): "Suspicion is no substitute for proof. The best way to prevent conviction of the innocent is to require the State to prove guilt by substantial evidence. In this case the State did not meet its burden." For the same reason the motion for directed verdict made on behalf of defendant Kapsch should have been granted.

#### II

Defendant Kapsch timely moved for a separate trial. Under the circumstances here I would hold that her motion, made before trial, should have been granted at that time. However, the motion to sever was not renewed at the close of all the evidence. Thus, the failure to grant the motion pre-trial was waived by failure to renew the motion. *See* A.B.A. Standards Relating to Joinder and Severance, § 2.1(b) (Approved Draft, 1968). On that basis I agree with the majority opinion that reversible error is not presented on appeal because of the denial of the severance motion.

## BECKY BOLLACK

Except for the issue of ownership of the car, the case against Bollack is no different from that against Kapsch. The only evidence concerning ownership of the car is Exhibit 24. This exhibit is a vehicle registration document which indicates the vehicle involved was registered to "Becky Bollack or Donna Koehler." The exhibit was offered in evidence, but I am unable to find from the record that the exhibit was admitted or received as evidence. Moreover, the index of exhibits at the close of the transcript fails to indicate the exhibit was received in evidence.*

Assuming that Bollack was in fact present in the car at a time after the burglary when the officer came to the car to investigate, I would hold that her motion for directed verdict should have been granted, for the reasons given concerning Kapsch, *supra*.

* SR 638–39, 759.